## DEKTOR v. OVERBROOK NAT. BANK OF PHILADELPHIA et al.

### No. 17060.

District Court, E. D. Pennsylvania.

Jan. 31, 1934.

Maurice Levan, of Philadelphia, Pa., for plaintiff.

Joseph W. Henderson (of Rawle & Henderson), of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

This is an action at law by a depositor against a national bank and its receiver. The gist of the action is that the defendant has refused the plaintiff's demand for the payment to him of his deposit, having theretofore wrongfully and without his authorization charged his account with various sums, which totaled the amount of the deposit and which it had paid out to a third party.

The trial was to the court and a jury, but both sides, have presented the general point without more and thus all issues of law and fact have been submitted to the court.

The plaintiff offered certain portions of the pleadings and rested his entire case upon the admissions contained therein. The defendant then immediately rested without adducing any evidence.

The pleadings, though offered, do not constitute the evidence. The evidence consists of certain admissions, and the scope and extent of these are for the court. The practice upon an offer of pleadings for this purpose is settled by a decision of the Supreme Court of Pennsylvania in Buehler v. United States Fashion Plate Co., 269 Pa. 428, 112 A. 632, 634, which we follow under the Conformity Act (28 USCA § 724). In that case the court said "While the pleadings in a case determine the issues, primarily they are not evidence for any purpose, unless made so by act of assembly. A fact averred in the statement of claim, and not specifically denied in the affidavit of defense, is an admitted fact, but

does not become such for purposes of trial, unless put before the jury in one of three ways: * * * (3) by offering in evidence specific parts of the statement of claim with what counsel conceive to be the replies thereto contained in the affidavit of defense, and having the facts thus sought to be established placed on the notes of trial as admitted, because averred in the statement and not denied in the affidavit of defense."

In case of dispute, just what "the facts thus sought to be established * * * as admitted" are must be determined by the court, and, as so determined, they, and not the pleadings themselves, become the evidence for purposes of trial.

If a fact is asserted in a paragraph of the statement of claim, the corresponding paragraph of the affidavit of defense is to be considered for one purpose only —to see how far it limits or how much it subtracts from the asserted fact. The remainder (after the court has made the subtraction) is the evidence.

We now turn to the record. The essential facts are to be found in paragraphs 6, 7, and 29 of the statement of claim and the corresponding paragraphs of the affidavit of defense. By these paragraphs the defendant admits (and this I do not think can be disputed):

(1) That on July 9, 1927, the plaintiff caused his promissory note, for $35,000 at 90 days to be delivered to the bank, that the bank discounted the note, and, after deducting the interest, placed the balance, or $34,216.38, in an account in the bank which was designated "Abraham Dektor, Building Account," and that a statement of the said account was rendered to the plaintiff under the name of "Abraham Dekstor" without the addition of the words "Building Account."

(2) That the plaintiff had demanded payment to him of the sum of $34,216.38 with interest, which has been refused.

Parenthetically it may be said that it is immaterial, as far as this case goes, whether it stood in the name of "Abraham Dektor, Building Account" or "Abraham Dekstor" or "Abraham Dektor." It has been too well settled to question that the addition of some designation to the name of the depositor does not affect the rights and obligations created by the deposit, and, if we take the account to be as the defendant alleges, it would be no different from an account in an individual name without more.

Nor is it necessary that the plaintiff allege that a check was drawn and presented by him. There is no suggestion that the refusal of the defendant to pay was based upon the fact that the demand was not made by check, and the position taken by the defendant makes it obvious that, whatever the fact, if a check had been presented, payment would have been refused.

The cause of action thus disclosed is a suit upon a contract. It is not an action for the recovery of a specific fund belonging to the plaintiff. The money deposited becomes the property of the bank, and the plaintiff acquires a contract right. The relation created is that of debtor and creditor. There is no express contract, but the terms are all implied. They arise from and are defined by the established usages of banking practice. One term ordinarily implied in the case of a general deposit is that the bank will pay the depositor the amount on deposit upon demand, the demand being made by the presentation of a check.

But the depositor's contract with the bank is like any other implied contract, in that it may be modified or changed by agreement of the parties, and in that an express agreement as to any particular term supersedes the obligation which would, in the absence of such agreement, be implied in that respect. "A bank deposit may be subject to any agreement which the depositor and the bank may make with respect to it, so long as the rights of third persons are not injuriously affected." 7 C. J. 642. Michie on Banking, c. 9, § 40. "It is competent for a bank of deposit to enter into a collateral agreement with the depositor with reference to the disposition of proceeds of the deposit." 7 C. J. 642, citing Newmark Grain Co. v. Merchants National Bank, 166 Cal. 203, 135 P. 958. This principle is too well known and too elementary to require much discussion. The special express contract may not go to the extent of creating a special deposit or of requiring the bank to keep the fund as a trust fund, although in many cases it will, but it is none the less valid and enforceable. Thus, agreements that a deposit will not be withdrawn by the depositor for a certain specified time or until a certain contingency are not uncommon.

In the case at hand, the plaintiff's case depends entirely upon an implied obligation on the part of the bank, arising from the deposit, to repay the money to him upon demand. The affidavit of defense pleads an express agreement that the money was not to be repaid upon demand or in any other way. Granted, that a substantive defense based on new matter could not be considered by the court, since this record is confined to admissions; nevertheless the scope and extent of the defendant's admissions are defined not only by what he denies, but also by what he avers affirmatively. This must necessarily be so in a case where the plaintiff relies upon an obligation usually arising by implication from a certain transaction. To allege that such obligation was not implied without more would probably be insufficient as stating a mere conclusion of law. The averment, however, that the obligation relied upon was not part of the agreement because of an express term superseding it, coupled with a statement of the express contract, is a proper denial and goes to the heart of the plaintiff's case.

Here the affidavit of defense avers unequivocally that no obligation to pay the plaintiff the amount of his deposit upon demand was implied or existed. Paragraph 7 of the affidavit of defense opens and closes with an express denial that the deposit was subject to the check, order, or control of the depositor. It sets forth in full an express agreement by which the money deposited was to be paid, not to the depositor, but to a corporation known as the Commercial Advance Corporation. It admits that the money was paid to the corporation without specific authorization of the plaintiff as to each payment, but carries the clear intendment that specific authorization was not necessary, setting up a general authorization covering the entire transaction. Paragraph 11 specifically avers that the facts recited, namely, the express agreement by which the deposit was not to be paid to the plaintiff at all, but to the corporation, "were facts well known to the plaintiff at the time of its (the deposit's creation, and that this element in the financing of an operation in which he was beneficially interested had been adopted with the plaintiff's full knowledge and consent." This is a plain statement that he was a party to the agreement.

It follows that there is no admission in this record that this particular deposit contained any implied term that it would be repaid to the plaintiff on his demand. The plaintiff's case depends upon the whole contract made at the time of the deposit. If an essential term of the contract is not admitted, his case is not established.

But the plaintiff, possibly recognizing this situation, argues that public policy forbids the bank to deny that the deposit was any other than a general deposit with all the ordinary implications. If this is so, then the contract of a bank with its depositor is indeed unique. It means that the implied terms are incontrovertible for all purposes. I do not think that this is the law, nor do I think the cases cited by the plaintiff support his view.

Undoubtedly, there are situations in which public policy forbids a bank to refuse to honor its depositor's check. It may not do so for its own benefit. Thus in First National Bank v. Mason, 95 Pa. 113, 40 Am. Rep. 632, relied on by the plaintiff, where money was deposited by the bookkeeper of a firm, subject to his check, the bank was not permitted to refuse payment to him upon a showing that the money deposited was really the money of the firm, and that the balance of the depositor's account had been applied to an overdraft in the firm's account. Note the limitations of that decision. When the bookkeeper made the deposit, it was in all respects an ordinary deposit, and, while both parties knew that the money was not the depositor's money, they did not attempt to limit his right to draw checks against it or to alter by express agreement any of the ordinary implications arising from the making of a general deposit. The distinction is quite clear between that case and the present one, as is seen by the following statement of the court: "It is clearly against public policy to permit a bank that has received money from a depositor, credited him therewith upon its books, and thereby entered into an implied contract to honor his check to allege that the money deposited belonged to some one else." It is one thing to say that a bank may not refuse to pay an ordinary depositor the money deposited on the ground that the money belongs to some one else. It is quite a different thing however when the bank refuses to pay, because the depositor has specifically agreed that it need not pay. I find no decision, however, and none has been cited, to hold that it is against public policy to receive a deposit upon the

express contract that it shall not be subject to the depositor's check.

█ Since the bank may legally deny the term of the contract on which the plaintiff stands, and since it has denied it, it follows that there are no admissions in the record by which this essential part of the plaintiff's case can be established. The plaintiff's case therefore fails, and judgment must be entered for the defendant.