The **FROST NATIONAL BANK, a corporation, Appellant,**

v.

**NICHOLAS AND BARRERA, a Professional Corporation, Appellee.**

No. 909.

Court of Civil Appeals of Texas, Tyler.

Feb. 26, 1976.
Rehearing Denied April 1, 1976.

John R. Locke, Jr., Groce, Locke & Hebdon, San Antonio, for appellant.

Fred Clark, San Antonio, for appellee.

McKAY, Justice.

This suit was brought by appellee, Nicholas and Barrera, a Professional Corporation, to recover a sum of money embezzled by a public accountant employed by appellee through use of a checking account at The Frost National Bank of San Antonio, appellant.

Appellee sought recovery both on a contractual theory and on a negligence theory: (1) that appellant breached the depository contract between it and appellee by failing to pay the amounts of checks drawn by appellee only to the named payee of such checks, and that as a matter of law a bank must pay a check only to the payee named therein or to his order; and (2) that appellant was negligent in failing to ascertain the identity and existence of Depository Account No. 607, the designated payee on the checks in question, and in failing to obtain a proper endorsement on the checks. Appellant's pleading on which it went to trial consists of a general denial and a plea that any loss or damage which may have been sustained by appellee was caused by the negligence of appellee.

This case has a previous appellate history, and in the first trial both parties filed motions for summary judgment. The trial court denied appellant's motion for summary judgment, granted appellee's motion, and decreed that appellee recover from appellant the sum of $22,288.93, the aggregate sum of six checks identified as Exhibits 2, 3, 4, 5, 6 and 7.

Upon appeal the San Antonio Court of Civil Appeals affirmed the trial court's judgment as to the check identified as Exhibit No. 2, which was in the amount of $2,141.20, and reversed and remanded the trial court's judgment for a new trial as to the checks identified as Exhibits 3, 4, 5, 6 and 7, which totaled $20,147.73. That opinion is found in 500 S.W.2d 906 (1973, ref'd, n. r. e.).

Upon remand the case was tried before a jury and the trial court charged the jury on the negligence of the appellant as well as appellee. The jury answered [1] that (1) appellee failed to sustain its burden of proving appellant negligent in crediting the sub-

1. "QUESTION NO. 1

"Do you find from a preponderance of the evidence that the defendant, Frost National Bank, was negligent in crediting the subject checks (Plaintiff's Exhibits Number 3 through 7) to depository account (Number 038–342) without obtaining indorsements on said checks?

"Answer 'We do' or 'We do not.'

"We, the jury, answer: 'We do not.'

\*   \*   \*   \*   \*   \*

"QUESTION NO. 3

ject checks to depository account without obtaining endorsements on said checks; (3) that appellant was negligent in not determining the existence or nonexistence of Depository Account No. 607 with regard to the checks; (4) that such negligence was a proximate cause of appellee's loss; (5) that appellee's officers were negligent in signing checks payable to "Depository Account Number 607" without investigating and ascertaining the nature of the account and who had control of it; (6) that such negligence was a proximate cause of appellee's loss; (7) that appellant failed to sustain its burden of proving that appellee's employee, Mary Louise Magnon, was negligent in depositing the five checks in question to "Depository Account" without first ascertaining the identity of the party in whose name said account was listed; (9) that Mary Louise Magnon was negligent in failing to call the attention of the officers of appellee to changes made by Patrick M. Penker in the procedure for paying Federal withholding taxes and F.I.C.A. taxes; and (10) that such negligence was a proximate cause of appellee's loss.

Appellee moved for judgment requesting the court to disregard the jury's answers to issues 5, 6, 9 and 10 on the ground that as a matter of law such findings do not constitute a defense to appellee's cause of action and that such findings have been rendered immaterial because of the jury's answer to issues 3 and 4. Appellant filed a motion for judgment on the verdict and also a motion for judgment non obstante veredicto on the ground that appellee's loss was the proximate cause of its own negligence; that

"Do you find from a preponderance of the evidence that the defendant, Frost National Bank, was negligent in not determining the existence or non-existence of depository account number 607 with regard to the checks (Plaintiff's Exhibits Number 3 through 7)?

"Answer 'We do' or 'We do not.'

"We, the jury, answer: 'We do.'

"If you have answered Question No. 3 'We do,' then answer Question No. 4; otherwise, do not answer Question No. 4.

"*QUESTION NO. 4*

"Do you find from a preponderance of the evidence that such negligence (inquired about in Question No. 3) was a proximate cause of the loss incurred by the plaintiff?

"Answer 'We do' or 'We do not.'

"We, the jury, answer: 'We do.'

"*QUESTION NO. 5*

"Do you find from a preponderance of the evidence that the officers of the plaintiff were negligent in signing checks (Plaintiff's Exhibits Number 3 through 7) payable to 'Depository Account Number 607' without investigating and ascertaining the nature of such account and who had control of it?

"Answer 'We do' or 'We do not.'

"We, the jury answer: 'We do.'

"If you have answered Question No. 5 'We do,' then answer Question No. 6; otherwise, do not answer Question No. 6.

"*QUESTION NO. 6*

"Do you find from a preponderance of the evidence that such negligence (inquired about in Question No. 5) was a proximate cause of the loss incurred by the plaintiff?

"Answer 'We do' or 'We do not.'

"We, the jury, answer: 'We do.'

"*QUESTION NO. 7*

"Do you find from a preponderance of the evidence that Mary Louise Magnon was negligent in depositing Plaintiff's Exhibits Number 3 through 7 to 'Depository Account' (Number 038–342) without first ascertaining the identity of the party in whose name said account was listed?

"Answer 'We do' or 'We do not.'

"We, the jury, answer: 'We do not.'

\* \* \* \* \* \*

"*QUESTION NO. 9*

"Do you find from a preponderance of the evidence that Mary Louise Magnon was negligent in failing to call the attention of the officers of the plaintiff to the changes made by Patrick M. Penker in the procedure for paying Federal Withholding Taxes and F.I.C.A. taxes?

"Answer 'We do' or 'We do not.'

"We, the jury, answer: 'We do.'

"If you have answered Question No. 9 'We do,' then answer Question No. 10; otherwise, do not answer Question No. 10.

"*QUESTION NO. 10*

"Do you find from a preponderance of the evidence that such negligence (inquired about in Question No. 9) was a proximate cause of the loss incurred by the plaintiff?

"Answer 'we do' or 'We do not.'

"We, the jury, answer: 'We do.' "

appellee, under the undisputed evidence was contributorily negligent as a matter of law; that the checks were so deposited at the express request of appellee and it should be barred from asserting that appellant was negligent in so doing; and that appellee, under the undisputed evidence, assumed the risk that a loss would occur by reason of the wrongful act of its agent.

The trial court granted appellee's motion for judgment, disregarded issue 10 and found that issues 5 and 6 did not bar recovery by appellee. Appellant's motion for judgment on the verdict and for non obstante veredicto was denied, and judgment was rendered for appellee for $20,147.73 plus interest of $4,661.13, a total of $24,808.86.

Although the facts were fully set out in the opinion of the court in the previous appeal we deem it necessary to restate them here. Appellee is a professional corporation engaged in the practice of law. Around February, 1971, appellee employed a public accountant by the name of Patrick M. Penker. Penker was employed originally to computerize the accounts receivable, but soon assumed the general accounting responsibilities of the firm. It was a part of his duties to calculate the monthly payments of withholding taxes, which were to be paid to the Internal Revenue Service, and generally to handle the accounting work in regard thereto.

Prior to Penker's employment, the withholding taxes had been handled by Mrs. Mary Louise Magnon, a long-time employee of appellee. It was her practice, after computing the amounts which should be withheld, to prepare a check drawn on the firm's bank account at the Frost National Bank in that amount, and to make the check payable to the order of the Frost National Bank. She would then take this check, along with a Federal Tax Deposit Card furnished by the Internal Revenue Service, to a special window in the back part of the Frost Bank. The check and card would be delivered to the teller at the special window, who would stamp a validation on the detachable small part of the card and then return it to Mrs. Magnon as her receipt for the payment of the withholding taxes. The Frost Bank, as are all national banks, is a designated depository for funds due the Internal Revenue Service. The bank routinely receives from its customers deposits made for the payment of withholding taxes, and they are customarily handled just as Mrs. Magnon handled these before Penker's employment.

Penker changed this system. Shortly after his employment by appellee, Penker went to the Frost National Bank and opened a personal checking account under the name of "Depository Account". The signature card on this account indicates that it was opened on March 30, 1971, with an initial deposit of $10. The account bears the customer account number of 038–342, and the only person authorized to draw checks on such account was Patrick M. Penker. Penker thereafter wrote and delivered to Mrs. Magnon a letter setting forth the procedure she was to follow thereafter in making payment of withholding taxes. Attached to the letter was a prototype which she was to use as a form in preparing the monthly checks for withholding taxes. These checks were to be made payable to the order of "Depository Account No. 607". He also delivered to her the preprinted deposit slips for his depository account which he had opened at the Frost National Bank, which showed the account number of 038–342 and had printed on them "Depository Account", but the number 607 does not appear thereon. Mrs. Magnon was instructed that instead of making the checks payable to the Frost National Bank as Mrs. Magnon had done in the past, she was to make them payable to Depository Account No. 607. After having the checks signed by Mr. Nicholas or Mr. Barrera she was to take them to a regular teller at the bank, rather than to the special teller at the back part of the bank, and was

to deposit them to the depository account, using the preprinted deposit slips. At Penker's request, Mrs. Magnon gave him all of the federal tax deposit cards which had been furnished by the Internal Revenue Service, Penker having told her that he would take care of them. These cards were never sent to the Internal Revenue Service, and Penker actually destroyed them.

Exhibits Nos. 3 through 7 were all deposited to the depository account, and thereafter Penker withdrew these funds, thereby misappropriating them to his own use. The fraud was discovered in early September, 1971, and no further checks were deposited after the check of July 30, 1971. All five checks involved here were payable to the order of "Depository Account No. 607," and each deposit slip bore the printed customer account number "038–342".

Appellant's points complain that the trial court erred (1) in failing to sustain appellant's motion for judgment non obstante because the evidence was insufficient to sustain a finding that appellee's loss was a proximate result of any negligence on the part of appellant, and (2) because under the undisputed evidence appellant breached no contractual duty to appellee; (3) in failing to disregard the jury findings to issues 3 and 4 because there was no evidence to support such findings; (4) in failing to enter judgment for appellant on the verdict because the only negligence found by the jury against appellant was not, as a matter of law, the proximate cause of appellee's loss; (5) in failing to render judgment for appellant on the verdict because the contributory negligence of appellee is a bar to its recovery; and (6) in disregarding the

jury's findings on issue 10 because such finding is supported by the evidence.

■■■ Rule 301,[2] T.R.C.P., provides that a trial court may render judgment non obstante veredicto if a directed verdict would have been proper, and such court may disregard any special issue jury finding that has no support in the evidence. The judgment rendered by the trial court can be upheld if the issues disregarded had no support in the evidence, that is, there was no evidence, or, if they did have support in the evidence, they were immaterial. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *First Am. Life Ins. Co. v. Slaughter*, 400 S.W.2d 590 (Tex.Civ. App.—Houston, 1966, writ ref'd, n. r. e.). The jury's findings may not be disregarded if there is any evidence of probative force, together with such inferences arising therefrom, which will reasonably support such findings. *Pool v. Dickson*, 512 S.W.2d 68 (Tex.Civ.App.—Tyler, 1974, no writ). In passing upon the question of the trial court disregarding jury findings, we must view the evidence in the most favorable light in support of the verdict. *Pool v. Dickson, supra*.

■■■ It is undisputed that an officer of appellee, either Nicholas or Barrera, signed each of the checks here involved after they had been typed with the amount in words and figures and made payable to "Depository Account No. (or # or Number) 607". It is also undisputed that Mary Louise Magnon knew of the change in procedure for deposit of funds for the purpose of paying withholding and F.I.C.A. taxes at appellant bank, and that she failed to inform appellee's officers. The record does not reveal

2. Rule 301. Judgments

The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence. Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law. Judgment may, in a proper case, be given for or against one or more of several plaintiffs, and for or against one or more of several defendants or intervenors.

that either Nicholas or Barrera made any inquiry or otherwise investigated or attempted to ascertain the nature of Depository Account No. 607. Under the record there is some evidence of probative value to support the findings of the jury to issues 5 and 6. Therefore, for the trial court to have properly disregarded issues 5 and 6, such issues must be shown to have been immaterial to the proper disposition of the case, and the jury's answers to issues 3 and 4 must be, as a matter of law, and regardless of other issues, determinative of the judgment to be rendered. We do not agree that issues 5 and 6 are immaterial.

■ The relationship between banker and depositor is contractual and on general demand deposits is one of debtor and creditor. 8 Tex.Jur.2d Banks, Secs. 234, 236. The contract of a bank with a depositor is to pay such money deposited on demand made at its banking house, in such sums, at such times, and to such persons as the depositor may direct. 9 C.J.S. Banks and Banking § 330, p. 673; *Stone Fort Nat. Bank v. Forbess*, 126 Tex. 568, 91 S.W.2d 674 (1936).

> "In the absence of an agreement to the contrary, under the implied contract between a bank and its depositor, the bank is under a duty to honor its depositor's checks or orders, where it has sufficient funds belonging to the depositor when the checks are presented, regardless of the purpose for which the check is given." 9 C.J.S. Banks and Banking § 342, p. 684.

The bank complied with the order of its depositor by depositing to the account of the payee the amount of the checks. No endorsement was required since the transaction was between the bank and two accounts of the bank. The number "607" apparently had no particular significance. When asked why he instructed Mary Louise Magnon to make out the checks to "Depository Account No. 607", Penker answered that it was to be a guise to indicate that the money was intended to go for taxes due the

Federal government. He said it was not a number which was required to be put on the check, but that it was used to give "confidence that 'yes', it is going to the right place," and to lend credence to the whole scheme. Nicholas and Barrera, acting for the corporation, directed the bank to pay the funds in the mistaken belief they were paying the corporation's withholding and F.I.C.A. taxes. They relied on their employees Magnon and Penker, but there seems to be no question they intended for the bank to pay the funds into the account where they were paid.

Appellee relies almost entirely upon the premise that since the check was made payable to the order of "Depository Account No. 607", the bank had a duty to determine whether there was such an account; and, having failed to do so, the bank was negligent, and such negligence was the proximate cause of its loss. The witness Krause, a Senior Vice President of appellant bank, testified the number 607 had no meaning to the bank, and that such a number usually means that it is some notation for the benefit of the customer. The witness Friese, a teller at Frost Bank for 29 years, testified that she assumed that the number meant something to the customer and that she would not confuse No. 607 with a checking account number. The witness Duncan, who had been teller, cashier and then Senior Vice President of Alamo National Bank for more than 30 years, testified that it was the custom and practice in the banking industry for a teller to accept checks such as those involved here for deposit when accompanied by deposit slips.

In 10 Am.Jur.2d, Banks, Sec. 556, p. 528, is found this language:

> "It is a common practice for drawers of checks to make memoranda or notations upon checks; these are usually for their own convenience or for the purpose of serving as a receipt when indorsed by the payees of the checks and returned to the drawers by the bank. The drawee bank,

however, is not bound to take notice of such memoranda and figures upon the margin of a check." (See 9 C.J.S. Banks and Banking § 332 c, p. 677.)

In *First Nat. Bank of Duluth v. School District No. 15 of Carlton County*, 173 Minn. 383, 217 N.W. 366, 56 A.L.R. 1369 (1928) on the face of a check was a notation that it was "For Warrant 157, 91 and int. School Dist. 15." When it was deposited in the bank, that bank held these warrants. The court held that the notation on the check did not bind the bank or affect its rights, and that "Such notations on a check, as between drawer and drawee, operate only to serve the convenience of the drawer."

We quote from 56 A.L.R. 1373:

"The cases generally hold that memoranda on checks descriptive of what the funds are, or the source from which they come, do not act as a notification to a bank of any facts which it is bound to investigate."

█ Generally, memoranda on a check describing the funds and the source from which they come, *or the payment intended by the check*, do not act as notification to a bank or other person receiving, paying or cashing such check, of any facts which it is bound to investigate. 11 Am.Jur.2d, Bills and Notes, Sec. 456, p. 496; *Spinazzola v. Manufacturers Nat. Bank*, 28 Mich.App. 207, 184 N.W.2d 265 (1970).

The old case of *Eyrich v. Capital State Bank*, 67 Miss. 60, 6 So. 615 (1889), is quoted in 56 A.L.R. 1373–4:

". . . Banks are not trustees of their depositors in that (sic) sense that they must see to the application of funds drawn by those entitled to check against them. In the multiplicity of business transactions innumerable instances must occur in which circumstances known to the bank, or some of its officers, would suggest doubts as to the destination of funds checked against, which circumstances, if investigated would disclose to what purposes the funds were being applied. But it has never been suggested that the bank may properly, much less that it ought as a duty to the beneficiary of the fund, suspend its ordinary course of business that it may satisfy itself as to the right of him authorized to draw out the fund to so apply it. Where there is not a duty to act there can be no responsibility for failing to act; and it must be held that banks discharge their duty to depositors when, in good faith, they disburse the funds held by them in compliance with the direction of him who has the right to direct such disbursement. There ought to be either a fraudulent purpose on the part of the bank or actual knowledge of a fraudulent design by another shown, before liability can be fixed on it for paying out funds on checks signed by him authorized to draw."

The Supreme Court of the United States in *State National Bank v. Dodge*, 124 U.S. 333, 8 S.Ct. 521, 31 L.Ed. 485, 56 A.L.R. 1374 (1888), said:

"No bank is bound to take notice of memoranda and figures upon the margin of a check, which a depositor places there merely for his own convenience, to preserve information for his own benefit; and in such case, the memoranda and figures are not a notice to the bank that the particular check is to be paid only from a particular fund."

The court held in *State Bank v. Reilly*, 124 Ill. 464, 14 N.E. 657, 56 A.L.R. 1375 (1888).

". . . It is well known (that) . . . the practice among banks, paying checks of their depositors, is not to observe memoranda upon such checks, but the custom is to regard them as having been made for the convenience of the drawers, and the practice in that regard, it is thought, has the sanction of law in its support."

And the court in *Duckett v. National Mechanics' Bank*, 86 Md. 400, 38 A. 983, 56

A.L.R. 1375 (1897), said that, "a memorandum on the check in question imposed no duty on the bank, and operated only to subserve the convenience of the drawer of the check."

"The addition of some designation to the name of the depositor does not affect the rights and obligations created by the deposit." *Dektor v. Overbrook Nat. Bank,* 10 F.Supp. 894 (E.D.Pa.1934).

In 2 Anderson, Uniform Commercial Code,[3] 2d Ed., Sec. 3–117:6, p. 721 is this language:

"When a payee is named in the instrument and following his name there are added words of description or identity which do not describe him as (1) the agent or officer for a specified person, or (2) any other fiduciary for a specified person or purpose, the words of description are ignored. The instrument is regarded as payable to the payee unconditionally and such additional words of description have no effect with respect to third persons."

■ Appellee insists that the rule applicable to this case is that a bank must pay a check only to the payee named or to his order, and that the bank, at its peril, must determine the identity and the existence of such payee and failing to do so or being unable to do so should refuse payment, citing *Guaranty State Bank & Trust Co. v. Lively,* 108 Tex. 393, 194 S.W. 937 (1917); *Liberty State Bank v. Guardian Savings & Loan Ass'n,* 127 Tex. 311, 94 S.W.2d 133 (Tex.Com.App.1936, opinion adopted); and *Greenville Avenue State Bank v. Lang,* 421 S.W.2d 748 (Tex.Civ.App.—Dallas, 1967, no

writ). We have no argument with the above rule, but in our opinion these cases are not in point inasmuch as they were concerned with forged indorsements. We believe the fact situation here distinguishes the instant case from those cited. The payee here was an account in the drawee bank and not a fictitious person who presented the check to the bank for payment, and the check here did not require indorsement if the funds were deposited to the intended payee.

In *Townsend, Oldham & Co. v. Continental State Bank of Gorman,* 178 S.W. 564 (Tex.Civ.App.—Ft. Worth, 1915, no writ), an exception is made to the above rule. We quote at page 566:

". . . The rule that a bank at its peril pays a check drawn upon it to any one save the actual payee, or to his order, and that, if it mistakes the payee's identity, it is responsible for the payment to one not the payee named, is subject to the exception that *if the payment is made to the one actually intended by the drawer as the payee, the payment is good.*" (Emphasis added.)

■ The drawer is not harmed if the action of the drawee bank with respect to a check carries out (or does not interfere with the accomplishment of) the drawer's purpose with respect to the check. *Gordon v. State Street Bank & Trust Co.,* 361 Mass. 258, 280 N.E.2d 152 (1972); *Nida v. Michael,* 34 Mich.App. 290, 191 N.W.2d 151 (1971).

■ Appellee argues that even if the drawer of a check is negligent a depositor is not precluded from recovery if it is established that the bank failed to use ordinary

**3.** Texas Business and Commerce Code
Sec. 3.117. Instruments Payable With Words of Description
   An instrument made payable to a named person with the addition of words describing him
   (1) as agent or officer of a specified person is payable to his principal but the agent or officer may act as if he were the holder;

(2) as any other fiduciary for a specified person or purpose is payable to the payee and may be negotiated, discharged or enforced by him;
(3) *in any other manner is payable to the payee unconditionally and the additional words are without effect on subsequent parties.* (Emphasis added.)

care, citing *Exchange Bank & Trust Co. v. Kidwell Construction Co.*, 472 S.W.2d 117 (Tex.1971), and *Oak Cliff Bank & Trust Co. v. Aetna Casualty & Surety Co.*, 436 S.W.2d 165 (Tex.Civ.App.—Dallas, 1968, no writ). These cases are check forgery cases and in our opinion are not in point here. Sec. 4.406, Tex.Bus. & Comm.Code, deals with the customer's duty to discover and report unauthorized signatures or alterations, and is concerned with failure of the customer to use reasonable care in examining his statement and cancelled checks and whether such negligence on the part of the customer precludes him from asserting a claim against the bank. What the bank did in the case at bar in complying with the depositor's order was done according to reasonable standards in the banking field; and, therefore, we conclude there was no lack of ordinary care on the part of the bank. The bank performed its duty to appellee according to reasonable standards, and, therefore, owed no further duty to appellee.

We are cognizant of the holding in *Southwest Nat. Bank v. Underwood*, 120 Tex. 83, 36 S.W.2d 141 (1931), and in *Greenville Nat. Exchange Bank v. Nussbaum*, 154 S.W.2d 672 (Tex.Civ.App.—Waco, 1941, writ ref'd w. o. m.), that if the bank, before paying forged checks, could have by reasonable care detected the forgeries, then it is liable for paying such forged checks even though the depositor may be negligent. These cases hold that a bank is bound to know the signature of its depositors, and it cannot charge the amount of forged checks paid by it to the depositor's account unless the depositor's negligence is shown to have been the proximate cause of the bank paying such forged checks. They also hold that the depositor's negligence is immaterial unless it is of a kind that directly and proximately affects the conduct of the bank in the performance of its duties.

Appellee has not cited us a case, nor have we found one, which holds that the bank had the same duty and responsibility to investigate and discover whether there was a "Depository Account No. 607" as it had to prevent the payment of forged checks. We believe the bank discharged its duty by complying with the request of its customer to deposit the checks payable to "Depository Account No. 607" into "Depository Account", and the bank was not bound to know whether there was such an account as "Depository Account No. 607" before accepting such deposits.

If it can be said that the bank had a duty to investigate and determine whether there was an account named "Depository Account No. 607" before accepting appellee's deposits, then we are of the opinion that the trial court erred in disregarding issues 5 and 6 by which the jury found appellee was negligent in failing to investigate and determine the nature of the account and who had control of it. The contributory negligence of appellee would offset the negligence of the appellant unless the bank was duty bound to do such investigating on its own before accepting such deposits. We have found no authority which required the bank to do so as a contractual duty where the deposit was made to the account intended by drawer. However, whatever violation of duty the bank may have committed in failing to use ordinary care as found by the jury in issues 3 and 4 was offset by the failure of appellee to use ordinary care as found in issues 5 and 6. It is our view that issues 5 and 6 have support in the evidence and are not immaterial to the judgment to be rendered in the case; and, therefore, the trial court erred in disregarding them.

Appellee had the burden of proving by a preponderance of the evidence not only that appellant was negligent but that such negligence was a proximate cause of appellee's loss. Under the record presented here, to conclude that a causal connection has been shown between any negligence of appellant and appellee's injury, it must be shown as the court charged the jury, that

"the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom." In our opinion proximate cause has not been shown. *Clark v. Waggoner*, 452 S.W.2d 437 (Tex.1970).

The record is silent as to whether appellant did or did not determine the existence of Depository Account No. 607. Issue 3 assumes such was not done. Nobody knows, as far as the record is concerned, whether appellant made such determination. It was not shown what teller handled the deposits although the record shows Mrs. Friese customarily was the teller used by Mary Louise Magnon.

We can only speculate as to the result or the consequences if appellant had investigated and determined the nonexistence of Depository Account No. 607. If such determination had been made it may have convinced the employees or officers of appellant that appellee intended the deposits to have been made in Depository Account as was done. But we do not believe under this record that such failure of appellant, if any there was, was a proximate cause of appellee's loss.

Appellees put their trust and confidence in Penker, turned over their books and records to him, and instructed Mrs. Magnon to do whatever Penker told her. No supervision or control was exercised over Penker. Appellee's faith and trust was misplaced, and Penker devised a scheme to defraud appellee. There seems to be no question but that Penker is liable to appellee for its loss. Under the record, however, we are of the opinion that appellant is not responsible for such loss.

We sustain appellant's points two, four and five.

The judgment of the trial court is reversed, and judgment is here rendered for appellant.