HARPER BUILDING SYSTEMS, INC., Appellant,

v.

The UPJOHN COMPANY, Appellee.

No. 8051.

Court of Civil Appeals of Texas, Beaumont.

Feb. 16, 1978.

Rehearing Denied March 16, 1978.

G. P. Hardy, III, Houston, for appellant.

Richard L. Josephson, Houston, for appellee.

CLAYTON, Justice.

This is an action brought by Harper Building Systems, Inc., against the Upjohn Company for damages resulting from breach of warranty. A separate suit was filed against appellee, Upjohn Company, by Porta-Courts, Inc., and the two suits were consolidated. Trial was to a jury on special issues. The parties to this appeal will be referred to as Harper and Upjohn.

The jury answered all liability issues in favor of Harper and awarded damages to Harper in the sum of $1,600 in actual damages and in the sum of $250,000 for lost profits. Damages in favor of Porta-Courts, Inc., were awarded in the judgment in the sum of $27,500 from which no appeal has been taken. Upjohn filed a motion for judgment non obstante veredicto, or, alternatively, to disregard the jury's answer to all issues.

The trial court granted Upjohn's motion as to Harper only in so far as it applied to the issue awarding Harper damages in the sum of $250,000 for lost profits and denied it in all other respects, and rendered judg-

ment for Harper for $1,600. Harper filed notice of limited appeal and prosecuted this appeal from that part of the judgment which denied a recovery of lost profits.

With all other questions eliminated as to liability on breach of warranty, etc., the only question before this court is whether or not the trial court properly disregarded and set aside the jury finding of $250,000 in lost profits, and entered judgment denying such award of damages to Harper.

■ Upjohn argues that there is no evidence of probative force to support the jury's findings as to damages for lost profits. A contention on appeal that an answer to a special issue should not have been disregarded presents a "no evidence" point. *Harbin v. Seale*, 461 S.W.2d 591 (Tex.1970); *Frost Nat. Bank v. Nicholas and Barrera*, 534 S.W.2d 927, 932 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.). In deciding a "no evidence" question, "the appellate court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary." *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *accord, Lucas v. Hartford Accident & Indemnity Co.*, 552 S.W.2d 796, 797 (Tex.1977); *Fisher Construction Co. v. Riggs*, 160 Tex. 23, 325 S.W.2d 126, 127 (1959).

Upjohn's entire argument as to damages for lost profits goes to the insufficiency of the evidence. We cannot consider this standard of review. We are compelled to consider the evidence in the light of a "no evidence" question.

Considering the evidence in the light most favorable to the jury finding and in accordance with the standard of review cited above, we find the evidence to show that Lee Harper in 1968 incorporated Harper Building Systems for the purpose of developing and promoting the use of a foam substance between two hard surfaces as providing a better building material than was then available. From that time until 1971, the corporation was "not really in business" and had "no intent of profit."

In the latter part of 1970, an Upjohn representative, who had been encouraging Harper to get into business, advised Harper that Upjohn was coming out with the best material for panels "that we could possibly get" which would require new machinery. Thereupon, Harper borrowed $125,000 to get in position to manufacture panels, and purchased expensive machinery and equipment and leased a building. Harper was ready for commercial production in May 1972 and purchased a large quantity of materials from Upjohn with which to produce the urethane filled panels. However, productions could not begin until contracts for sale of the panels had been obtained.

The first contract for use of the panels was with Vacca to build a portable office building which showed a profit for Harper of $1,500, and this led to a contract, dated December 1972 with Vacca, operating as Astro Portable Building Company, granting an exclusive agency to sell the panels, with a "guarantee" by Astro of a minimum of $150,000 in volume sales from February 1973 to January 1, 1974.

In December 1972 Harper contracted with Porta-Courts, Inc., for 250 tennis courts requiring use of 225 panels each at $5,400 per court. Panels for three courts were constructed and delivered between January and March 1973. At this time, it was determined that the foam was defective causing the panels to shrink, and, because of this problem, the defect in the materials which gave rise to this breach of warranty litigation, Harper could no longer manufacture and sell the panels. There was evidence showing that the cost of producing one panel was $8.01, making 225 panels cost $1,802.25, leaving a profit of $1,282 per court, or $320,500 for the contracted 250 courts.

Because of the failure of the Upjohn foam, Harper was unable to furnish the panels under the Vacca contract. Vacca, unable to obtain Harper's panels, started building conventional Astro Portable buildings, with sales in 1973 of $69,900 for some three and a half months, $150,000 in 1974, and $251,000 in 1975. Vacca testified he could have done as well with Harper panel materials—"I know I could have done it."

In addition to the above contracts, Harper had made a proposal to Kelly Reynolds, which was accepted, to furnish materials for construction of twenty-seven townhouses for $281,855.50, including Harper panels at $77,666.52, but at the time Reynolds could not get acceptable interim financing. Subsequently, Reynolds obtained the financing, but Harper could not furnish the panels when Reynolds was ready, because of the defect in Upjohn's foam.

■ The evidence referred to above clearly presents some evidence of probative force to support the jury's finding of lost profits, and the issue awarding damages therefor should not have been disregarded and set aside.

Upjohn argues further that damages cannot be awarded for the reason that Harper's business was new and unestablished and for such reason could not recover for lost profits. In *Atomic Fuel Extraction Corporation v. Slick's Estate,* 386 S.W.2d 180, 188–89 (Tex.Civ.App.—San Antonio 1964, writ ref'd n. r. e. per curiam, 403 S.W.2d 784 (Tex.1965), the court states:

"In *Southwest Battery Corporation v. Owen,* supra, because there was an established business, future profits were allowed. In those Texas cases which have permitted recovery, there was some data and history of profits from an established business [citing cases]. . . . In sharp contrast with those precedents are those which have consistently denied future profits when the business was new and unestablished [citing cases]."

Our Supreme Court in *Southwest Battery Corporation v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1099 (1938) states the rule as follows:

"The rule denying a recovery where the facts show that such profits claimed are too uncertain or speculative, or where the enterprise is new or unestablished, is still enforced, on the ground that the profits which might have been made from such business are not susceptible of being established by proof to that degree of certainty which the law demands. 13 Tex. Jur. p. 207, Sec. 108; p. 216, Sec. 115; 17

C.J. pp. 790, 791, and cases cited in notes."

It is also stated in *Pace Corporation v. Jackson,* 155 Tex. 179, 190, 284 S.W.2d 340, 348 (1955) that

"Recovery of damages in the nature of lost profits is allowed where a business is established on the strength of a contract but is discontinued because of its breach. *Big Four Ice & Cold Storage Co. v. Williams,* Tex.Civ.App., 9 S.W.2d 177, writ refused; *Graham Hotel Co. v. Garrett,* Tex.Civ.App., 33 S.W.2d 522, writ dismissed, 64 Harv. Law Rev. 317."

■ In the cases denying recovery where the business is new or unestablished, the reasons for such denial are that before the establishment of the business profits could not have been made and could not be used in reasonably anticipating profits to be made in the future, and therefore any proof of future profits would be entirely too speculative and conjectural as to allow a recovery for such profits.

■ Upjohn relies strongly upon *Atomic Fuel Extraction Corporation v. Slick's Estate,* supra, as authority for denying recovery because Harper was a new and unestablished business. This case is distinguishable from our case under review in that the facts in *Atomic* do not show that there was any type of business actually in existence before the breach, and, we think importantly, there were no contracts of any kind upon which the proposed business establishment could rely. However, in our case, Harper had been in the business of manufacturing the panels, and had made a profit of approximately $5,000 therefrom prior to the breach of warranty.

In addition to these facts, Harper had contracts to supply the panels manufactured by using Upjohn's materials. The contracts were for a definite number of panels and for a definite price. The profits expected to be derived therefrom could be determined with such reasonable degree of certainty that it could not reasonably be said that the profits were entirely too speculative and conjectural as to allow recovery

therefor. Under the facts of this case we hold that Harper could and should be allowed to recover his lost profits. This holding is based upon the evidence as we review it under the standards of review we are compelled to follow in a "no evidence" question, as to the proof of lost profits.

▉ Upjohn argues that the trial court properly granted the motion for judgment notwithstanding the verdict because its agreement with Upjohn specifically limited damages to the purchase price of the materials and rejected any recovery of consequential damages. We do not agree. The evidence shows that the contract for the sale of the materials used in producing the foam used by Harper came into existence by virtue of an offer and acceptance between the parties.

The agreement between Harper and Upjohn for the sale of the materials was made in a blanket order for 100,000 pounds of the material. The entire offer and acceptance for the sale to Harper were included in this blanket order: the transaction was "closed" when this blanket order was issued and filled by Upjohn. A specification sheet containing instructions as to the method of preparation of the materials was not a part of or necessary to the completion of this agreement. This specification sheet contained, at the bottom of the sheet this clause, in very small print: ". . . Buyer's exclusive remedy as to any breach of warranty or negligence claim shall be limited to the purchase price of the materials."

▉ The only purpose for the specification sheet was to instruct Harper regarding "technical information" needed to use the materials. Upjohn argues that *Tex.Bus. & Comm.Code Ann. § 2.207* (1968) provides that additional terms of a contract which are included within an "expression of acceptance" are to be construed as proposals for addition to the contract. We do not consider this specification sheet as being an "expression of acceptance" because there is no evidence in the record as to when the specification sheet was received by Harper. In the absence of such evidence it cannot be said that such instrument became a part of the contract.

The trial court being in error in disregarding the jury finding as to damages for lost profits, the judgment of the trial court is reversed as to that part of its judgment, and we now render the judgment which should have been rendered by the trial court: that appellant recover from appellee the sum of $250,000 for lost profits.

REVERSED and RENDERED.

KEITH, Justice, dissenting.

I respectfully dissent. The late Judge Warren Cunningham, then one of the most able trial judges of this State, presided at the trial of this cause; he passed upon Upjohn's motion for judgment non obstante veredicto after he had reviewed a transcribed copy of the evidence adduced upon the trial. He concluded, and I concur, that the evidence of loss of future profits is so weak "as to do no more than create a mere surmise or suspicion of its existence, [and] such evidence is in legal effect no evidence, and it will not support a verdict or judgment." *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752, 755 (Tex.1970).

There is, perhaps, to use the language of Chief Justice Calvert in *Seideneck,* supra, "a glimmer of evidence" to support plaintiff's lost profit theory; but it is legally insufficient under the famous decision of *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059, 1063 (1898). In considering the appeal of plaintiff, we are confronted with a "no evidence" point. The review is under the standards set out in *Gulf, Colorado & Santa Fe Railway Company v. Deen,* 158 Tex. 466, 312 S.W.2d 933, 937 (1958), which requires that there be more than a mere scintilla of evidence to support a verdict.

The rule governing plaintiff's right to recover is set out in *Universal Commodities, Inc. v. Weed,* 449 S.W.2d 106, 113 (Tex.Civ. App.—Dallas 1969, writ ref'd n.r.e.), where the leading authorities are discussed:

"The court properly denied appellants any recovery for the loss of future profits. Universal and its three corporate stockholders and officers were attempt-

ing to start a new business. The general rule is that the loss of anticipated profits from a new business is too speculative and conjectural to support a recovery of damages. *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097 (1938); *Barbier v. Barry,* 345 S.W.2d 557, 563 (Tex.Civ.App., Dallas 1961, no writ). It is true that lost profits will not be denied merely because a business is new if factual data is available to furnish a sound basis for computation of probable losses. *Pace Corporation v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 348 (1955), which involved a new business actually established and operated for a while. But in the case now before us the undisputed evidence shows that there was no basis for the recovery of damages for loss of anticipated profits."

See also *Davis v. Small Business Inv. Co. of Houston,* 535 S.W.2d 740, 743 (Tex.Civ.App. —Texarkana 1976, writ ref'd n.r.e.); *General Supply & Equipment Co., Inc. v. Phillips,* 490 S.W.2d 913, 921 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.).

Plaintiff purchased $1,600 in material from Upjohn and used it in manufacturing a sufficient number of panels to construct three portable buildings which he sold to a stockholder who, too, was entering into a new business. Although the stockholder, Vacca, "guaranteed" that his company would purchase $150,000 in panels from plaintiff each year, Vacca's company had gross sales in that year of less than $70,000. One building company, headed by Kelly Reynolds was unable to procure financing and no sales were ever made. The record is most unsatisfactory with regard to the profit, if any, which Harper made on the sale of the portable buildings to Vacca and the tennis court panels to Porta-Courts. We have estimates, but no books or records, from Harper showing a profit from $1,500 to $5,000. Harper's expert witness calculated a gross profit from such sales in the neighborhood of $5,000.

This is the classic case of a new business entering an untested field with a new product and founders upon a combination of bad luck, under capitalization, and lack of technical know-how. In this instance, its failure may have been aided by the defects in Upjohn's product; but the stubborn fact remains that there is no competent evidence, under the standards laid down in the line of cases discussed in *Universal Commodities, Inc. v. Weed,* supra, § 449 S.W.2d at 113, to support the award of lost future profits. Such profits were too speculative, legally, to entitle Harper to a judgment.

There is yet another reason for an affirmance of the trial court's judgment—the limitation of damages contained in the technical information sheet provided to plaintiff at the time of the sale.

Lee Harper testified that the information sheet was used to supply technical data on how to use the material. He testified: "This is technical information on the 426 system," and agreed, when questioned, that it "contains the information that you followed when you made your foam . . ?" It is fair to say that Harper could not have used the foam without having the information sheet, or similar information available to him.

The limitation of damages was clearly and conspicuously shown on the technical information sheet and read in part as follows:

"Accordingly, Buyer assumes all risks whatsoever as to the use of these materials and Buyer's exclusive remedy as to any breach of warranty or negligence claim shall be limited to the purchase price of the materials."[1]

Since Harper could not have used the material which he purchased without using the technical information sheet accompanying the materials, his use of the sheet constituted an "expression of acceptance" as that term is used in the Texas Uniform Commercial Code [hereinafter Texas U.C.

---

1. The jury found that Harper purchased materials from Upjohn costing $1,600 and no appeal has been taken from the judgment awarding that sum to Harper.

C.], *Tex.Bus. & Comm.Code Ann. § 2.207(a) (1968).*[2]

The technical information sheet accompanied the goods and was brought to the attention of Harper contemporaneously with the consummation of the bargain. He had ample opportunity to object or indicate his nonacceptance of the limitation of liability but did not do so. Moreover, the requirements of *§ 2.719* of the *Texas U.C.C.*[3] were clearly applicable to this commercial transaction involving the purchase and sale of material where only consequential damages were sought. Before Harper began using the foam, he was on notice that he could not recover consequential damages because of product failure. See generally *Nelson v. Union Equity Co-op. Exchange,* 548 S.W.2d 352, 356 (Tex.1977).

In our case, Harper urges that the limitation upon the warranty is unconscionable; but the statute refutes that contention. I conclude, just as the El Paso Court did in *Lankford v. Rogers Ford Sales,* 478 S.W.2d 248, 251 (Tex.Civ.App.—El Paso 1972, writ ref'd n.r.e.), that the limited warranty precludes the recovery of consequential damages by Harper.

I decline to join in an opinion by which a quarter of a million dollars is awarded to a businessman who has not shown any right to be so enriched at the expense of another business. I would affirm the judgment of the trial court.

2. All references herein are to the Texas U.C.C., as codified in Vernon's Texas Business & Commerce Code Annotated.

3. *§ 2.719(c):* "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages or injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."