IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 25, 2005 Session

## ROBERT LEDFORD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 243211     Stephen M. Bevil, Judge**

_____

**No. E2004-01744-CCA-R3-PC - Filed March 24, 2005**

_____

The petitioner, Robert Ledford, appeals the trial court's denial of post-conviction relief. The single issue presented for review is whether the petitioner was denied the effective assistance of counsel incident to his guilty pleas for second degree murder, aggravated robbery, especially aggravated kidnaping and theft. The judgment of the trial court is affirmed.

**Tenn R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which J. CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

D. Marty Lasley, Chattanooga, Tennessee, for the appellant, Robert Ledford.

Paul G. Summers, Attorney General & Reporter; Michelle Chapman McIntire, Assistant Attorney General; and Jason Thomas, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In January of 2001, Dorothy Lowery, the seventy-four-year-old victim, was robbed, kidnaped from her residence in Ooltewah, and murdered. An investigation established that the petitioner, who was married to a relative of the victim, and Dennis Raby entered the victim's residence, bound her with duct tape, and ransacked the interior of her house. Afterward, the victim was placed in the trunk of her 1996 Chevrolet Impala and driven to another residence where Raby was seen in possession of her jewelry. A few days later, the body of the victim was discovered in a wooded area in Meigs County. The petitioner's fingerprints were found on a roll of the duct tape used to bind the victim and on a Styrofoam cup located inside her residence. The cup also contained saliva identified as that of the petitioner. An autopsy revealed that the victim died as a result of blunt force trauma to the head and the body. Raby committed suicide as police attempted to make his arrest.

Because the petitioner was indicted on three counts of felony murder, one count of premeditated first degree murder, aggravated robbery, theft, and especially aggravated kidnaping, the state could have sought a sentence of life in prison without parole or the death penalty. As a part of a plea agreement, the petitioner pled guilty to second degree murder, aggravated robbery, especially aggravated kidnaping, and theft. On the murder conviction, the petitioner was sentenced to a Range II, forty-year term. The remaining sentences were ordered to be served concurrently: aggravated robbery, Range I, twelve years; theft more than ten thousand dollars, Range I, six years; especially aggravated kidnaping, Range I, twenty-five years. All pleas, which were entered September 12, 2002, were best interest pleas. See Alford v. North Carolina, 400 U.S. 25 (1970); Dortch v. State, 705 S.W.2d 687 (Tenn. Crim. App. 1985).

On February 12, 2003, the petitioner filed a petition for post-conviction relief alleging that his counsel was ineffective for having failed to request a mental evaluation, for having failed to adequately investigate the circumstances of the offense, for having failed to communicate the petitioner's various options, and for having failed to ensure, particularly because of the petitioner's poor reading skills, that the Alford pleas were knowingly and voluntarily made.

At the evidentiary hearing, the petitioner claimed that because he only had an eighth grade education and could not read well, he did not fully understand the consequences of his plea. The petitioner acknowledged that he had testified during the plea colloquy that he understood his sentence, that he was satisfied with the performance of his counsel, and that he was free from the influence of any drugs. He claimed, however, that the possibility of a life sentence without parole and the medication he was taking at the time of his plea affected his understanding of the agreement. The petitioner, who was on release from prior convictions at the time of these crimes, conceded that he had entered guilty pleas to those earlier charges.

Kelli Black, the attorney who represented the petitioner at the time of his pleas, and Stanley Lanzo, an attorney who had previously represented the petitioner on the same charges, testified for the state. Attorney Lanzo, who represented the petitioner from February 2001 until March 2002, testified that he met with the petitioner at the jail, advised him not to make a statement to the police, and monitored the progress of the forensic investigation. An initial concern on his part was that the state might seek the death penalty. By March of 2002, Attorney Lanzo had received an offer from the state for a forty-year sentence. After he communicated the offer to the petitioner, the petitioner notified him that he wanted to hire another attorney and Attorney Lanzo withdrew.

Attorney Black met with the petitioner on five occasions prior to the announcement of the plea agreement. According to Attorney Black, the petitioner ultimately accepted the plea agreement because he did not want to risk a sentence of life without the possibility of parole. During their discussions, the petitioner acknowledged participating in the crimes but denied killing the victim. She stated that she had explained to the petitioner that he could be found guilty of felony murder even though he had not technically caused the victim's death. Attorney Black testified that the petitioner did not want a mental evaluation, that he understood the nature of the proceedings, that

he was "very lucid," and that she had reviewed the plea agreement "word for word" with him because of his difficulty with reading.

At the conclusion of the evidentiary hearing, the trial court, in pertinent part, found as follows:

(1) While the petitioner was taking medication for a sleep disorder at the time of the pleas, read at a second or third grade level, and was prescribed Chlorpromazine for hallucinations at the time of the evidentiary hearing, the evidence established that he did not want a mental evaluation prior to trial, fully understood the proceedings, and was able to give a detailed account of the relevant facts to his trial counsel;

(2) That the petitioner fully understood the nature of the charges against him and that counsel was not deficient in communicating the terms of the plea agreement;

(3) That the petitioner entered knowing and voluntary pleas of guilt on each charge and that the petitioner had been accurately advised by his trial counsel before entering into the pleas.

In this appeal, the petitioner argues that his counsel was ineffective by having failed to fully investigate and to explain all possible alternatives and that the guilty plea was neither knowingly nor voluntarily made.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witness and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

The applicable law is well settled. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 534 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the

petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a [petitioner] must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). As to guilty pleas, the petitioner must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the guilty pleas and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In Boykin v. Alabama, 395 U.S. 238 (1969), the United States Supreme Court ruled that defendants should be advised of certain of their constitutional rights before entering pleas of guilt. Included among those are admonitions regarding the right against self-incrimination, the right to confront witnesses, and the right to trial by jury. Id. at 243. "[T]he core requirement of Boykin is 'that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary.'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Fontaine v. United States, 526 F.2d 514, 516 (6th Cir. 1975)). The plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25 (1970). If the proof establishes that the petitioner was aware of his constitutional rights, he is entitled to no relief. Johnson v. State, 834 S.W.2d 922, 926 (Tenn. 1992). A plea which is the product of "ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats" is not voluntary. Boykin, 395 U.S. at 242-43.

In determining whether a defendant knowingly and voluntarily entered into a guilty plea, this court must consider "all of the relevant circumstances that existed when the plea was entered." State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). In Blankenship, our supreme court determined that the various factors included the following:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the

-4-

reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

858 S.W.2d at 904.

Initially, the evidence does not preponderate against the post-conviction court's finding that trial counsel was not deficient for having failed to request a mental evaluation. While the petitioner claimed a diminished capacity, the testimony of the witnesses for the state suggested otherwise. Moreover, the petitioner failed to produce any evidence to establish that there was a factual basis to support a mental evaluation. In order to establish any basis for relief, the petitioner must do so. See Lisa Putman Mencer v. State, M2002-00715-CCA-R3-CD (Tenn. Crim. App., at Nashville, May 6, 2003).

The petitioner has also failed to establish that his counsel was ineffective by failing to fully advise him of his alternative courses of action, including a strategy that he was simply an accessory to the crime. The forensic evidence that the petitioner was involved in the abduction of the victim negated any potential defense that the petitioner was involved in the crimes only after their commission. The record also establishes that Attorney Black went over the plea agreement with the petitioner "word for word." Both Attorney Black and Attorney Lanzo explained to the petitioner that he faced the possibility of a sentence of life without parole or even the death penalty, if sought by the state. Further, before accepting the plea, the petitioner was advised by the trial court of the minimum and maximum term for each offense.

Finally, the evidence supports the post-conviction court's conclusion that the petitioner was properly advised by his counsel as to the consequences of his guilty plea. The record establishes that Attorney Black made every effort to ensure the petitioner understood his right to trial, the nature of the charges against him, and the potential for punishment. The totality of the circumstances suggests that the plea agreement was knowingly and voluntarily entered into and that any medication taken by the petitioner was not a factor. The petitioner was familiar with criminal proceedings, had competent counsel, received ample advice, and avoided a potentially greater penalty.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE