MASCO INTERNATIONAL, INC., et al., Appellants,

v.

Richard M. STOKLEY, Appellee.

No. 5161.

Court of Civil Appeals of Texas, Eastland.

June 8, 1978.

Rehearing Denied June 29, 1978.

Vance Dunnam, Dunnam, Dunnam & Dunnam, Waco, for appellants.

William Andress, Jr., William Andress & Associates, Dallas, for appellee.

## 600

RALEIGH BROWN, Justice.

Richard M. Stokley sued Masco International, Inc., Nick L. Spanos, and Gwen Mills as Administratrix of the Estate of Larry Mills, Deceased, on a promissory note in the principal amount of $57,500, and being part of the purchase price for all shares of stock of Universal Lubricants, Inc. Defendants filed a cross-action alleging false representation in the sale of the stock and sought damages in the amount of $60,000 as an offset and credit against the note. Based on the jury's answers to special issues, judgment was entered against defendants for the principal, interest and attorney's fees with no credit or offset allowed. Masco, Spanos, and Mills, Administratrix, appeal. We reverse and remand.

The jury found that Stokley represented to Spanos that (1) L. T. L. Corporation was in good standing with Hatco Chemical Company; (2) L. T. L. Corporation had a binding agreement to purchase lubricant from Hatco Chemical Company; (3) L. T. L. Corporation had the exclusive right to purchase lubricant from Hatco Chemical Company; and, (4) L. T. L. Corporation could supply Universal Lubricants, Inc. with all the lubricants it desired to purchase. Each of these representations were found by the jury to be false, were made for the purpose of inducing the purchase of the stock, were material facts, but were not relied upon by Spanos. Reliance is a necessary element of actionable fraud. *Wilson v. Jones*, 45 S.W.2d 572 (Tex.Comm'n.App.1932, holding approved). The jury also found appellants were damaged in the sum of $50,000.

Appellants first argue the trial court erred in overruling their motion for judgment non obstante veredicto because the evidence conclusively established that Spanos relied upon the representation of Stokley.

In passing on appellants' first point of error, this court agrees with the court's statement in *Jack Criswell Lincoln Mercury, Inc. v. Tsichlis*, 549 S.W.2d 255 (Tex.Civ.App.—Beaumont 1977, no writ):

" . . . A trial court is authorized to enter judgment non obstante veredicto only 'if a directed verdict would have been proper.' Before such a motion may be granted, it must be determined that there is no evidence having probative force upon which the jury could have made the findings relied upon. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194, 199 (1952). And, the trial court, in passing upon the no evidence point so presented must consider the evidence in the light most favorable to the jury's findings, considering only the evidence and inferences which support the verdict and rejecting the evidence and inferences which are contrary thereto. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 550 (1962). These rules have been followed uniformly by our courts for many years. See, e. g., *Grundmeyer v. McFadin*, 537 S.W.2d 764, 768 (Tex.Civ.App.— Tyler 1976, writ ref'd n. r. e.).

Thus, only a 'no evidence' point is before a court when considering a motion for judgment non obstante veredicto. This is, essentially, a question of law. See R. Calvert, 'No Evidence' and 'Insufficient Evidence' Points of Error, 38 Tex. L.Rev. 361, 362 (1960) . . . "

Appellants contend that Stokley judicially admitted that Spanos relied on his representations and that such admission together with Spanos' testimony resolved the reliance issue.

The pertinent testimony by Stokley follows:

"Q You represented to this man that Universal did have the exclusive agreement to purchase from L.T.L.?

A That's right.

Q And you expected Mr. Spanos to rely upon that, did you not?

A I did.

. . . . .

Q And these facts were discussed between you and Mr. Spanos, were they not?

A They were. Also between L.T.L. and Mr. Spanos.

Q All right, and everything you told Mr. Spanos you expected him to rely upon, didn't you?

A I did.

Q And you expected him to believe you?

A I did.

Q And in fact you told Mr. Spanos that L.T.L. had a good relation with Hatco and were able to buy the product from Hatco, and in turn, sell it on to Universal?

A That's right.

Q And you expected the man to believe you and rely upon it?

A I did.

Q In fact you told him that L.T.L. Corporation had a binding contract with Hatco to purchase the product from the manufacturer?

A I believe I showed him a copy of the contract.

Q All right, and you intended him to rely upon that, did you not?

A Sure.

Q In fact, you also told him that L.T.L. Corporation was the only company that had the exclusive right to buy the product from Hatco?

A That's true.

Q And you intended this man to rely upon that statement?

A That's true.

Q And you also advised him that L.T.L. Corporation could and would supply Universal Lubricants with all lubricants that Universal desired to purchase from them?

A That's true.

Q And you intended this man to rely upon that, did you not?

A I did.

Q You intended Masco to rely upon that, did you not?

A One and the same.

Q Okay. In other words, when you were dealing with Mr. Spanos you knew you were dealing with Masco?

A (Witness nods head affirmatively.)"

Our examination of the record reflects that Stokley never retracted such testimony.

Spanos testified:

"Q State whether or not you were advised by Mr. Stokley that L.T.L. could and would supply Universal with all the lubricant it desired to purchase?

A Yes, sir, we were assured of that, yes, sir.

Q Did you purchase or cause to be purchased by your corporation, Masco, the shares of stock in reliance upon these representations which were made to you by Mr. Stokley?

A Yes, sir, uh-huh.

Q Would you have purchased the stock and paid that price had he not told you these things?

A No, sir."

We do not agree that Stokley's testimony constituted a judicial admission that Spanos relied on the representations.

The court in *Griffin v. Superior Insurance Company*, 161 Tex. 195, 338 S.W.2d 415 (1960) considering a judicial admission said:

" . . . 'As long as the * * * admission stands unretracted, the fact * * admitted, for the purpose of the case, is accepted as true by the court and jury and binding on the party making it, i. e., he cannot introduce evidence to contradict it.' A number of Texas cases are cited to sustain this proposition.

In 169 A.L.R. 799, II, it is stated that 'if a party, in his testimony, makes a material statement of fact negativing his right of action or defense, and no more favorable testimony appears to contradict or modify it, he is bound by it regardless of its credibility. * * *' Further, on pages 800–801, III, the rule is stated to be that 'if a party testifies deliberately to a concrete fact, not as a matter of opinion, estimate, appearance, inference, or uncertain memory, but as a considered circumstance of the case, his adversary is entitled to hold him to it as an informal judicial admission.' On page 824, in discussing the Texas rule on this point, it is stated that 'the Texas Court of Civil Appeals appears to have adopted the Missouri rule, "A party plaintiff testifying in his own behalf as to the existence of a fact is absolutely concluded thereby, unless he

makes a correction thereof giving some excuse of mistake, oversight, misunderstanding, or lack of definite recollection," ' . . ."

In *Mobil Oil Company v. Dodd*, 515 S.W.2d 351 (Tex.Civ.App.—Corpus Christi 1974, no writ), the court said:

"A judicial admission consists of a formal statement, either by a party or his attorney, in the course of a judicial proceeding which removes an admitted fact from the field of controversy. *United States Fidelity & Guaranty Co. v. Carr*, 242 S.W.2d 224 (Tex.Civ.App.—San Antonio 1951, writ ref'd). In effect, it is a substitute for evidence which takes the matter out of the domain of proof. It cannot be contradicted by the introduction of evidence contrary thereto. *Griffin v. Superior Insurance Company*, 161 Tex. 195, 338 S.W.2d 415 (1960); McCormick & Ray, Texas Law of Evidence, Vol. 2, § 1127; 39 Tex.Law Rev. 516. 'A "judicial admission" is a waiver of proof'. *Mahoney v. Mahoney*, 103 S.W.2d 459 (Tex.Civ.App.—Amarillo 1937, writ ref'd). The doctrine should be applied with caution. *United States Fidelity & Guaranty Co. v. Carr*, supra."

Although Stokley admitted that he intended Spanos to rely on his representations, such does not constitute a judicial admission that Spanos did in fact rely on such representations.

 Turning to the testimony of Spanos on the issue of his reliance on the representations of Stokley, we recognize Spanos to be an interested witness. The rule applicable to the testimony of such a witness is stated in *Gevinson v. Manhattan Construction Company of Oklahoma*, 449 S.W.2d 458 (Tex.1969):

" . . . The general rule is that evidence given by an interested witness, even though uncontradicted, presents an issue to be determined by the trier of fact. This rule is not without exception, however, and conclusive effect may be given to the testimony of an interested witness provided the testimony is clear, direct and positive and there are no circumstances tending to discredit or impeach the same. There is an added reason for recognizing the exception when the opposite party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so. On the other hand the basis for recognizing an exception is weakened somewhat when the testimony is such that it could not readily be contradicted if untrue. See *James T. Taylor & Son, Inc. v. Arlington Ind. Sch. Dist.*, 160 Tex. 617, 335 S.W.2d 371; *Owen Development Co. v. Calvert*, 157 Tex. 212, 302 S.W.2d 640; *McGuire v. City of Dallas*, 141 Tex. 170, 170 S.W.2d 722."

We overrule appellants' first point of error.

Appellants urge that the trial court erred in failing to grant their motion for mistrial when attorney for appellee informed the jury that Spanos had agreed to pay $40,000.

Appellants argue that during the entire trial they had taken a firm position before the jury that they were not indebted to appellee on the promissory note by reason of the misrepresentations. Appellants contend that regardless of being fully aware of such position, attorney for appellee while on re-cross-examination of Spanos deliberately stated before the jury that Spanos had agreed to pay $40,000 to Stokley. The record reflects the following:

"Q Mr. Spanos, from the time that you learned from your conversation with Mr. Peterson until this pleading in September of '76, did you ever notify Richard Stokley in any manner that you thought that he had made any misrepresentations?

A You bet, yes, sir.

Q How?

A Mr. Stokley and Mr. Sorrells came to my terminal in Waco and they had a big deal about some Indian that owned a bunch of land in California and they could get a million acres for a hundred thousand dollars and Stokley said regardless if we have got a suit going against each other, this is a

business deal and I am not going to stand in the way, you and I can make a million dollars and at that time I told him I didn't want to get involved because I had already been, I didn't use the word cheat, I had already been taken advantage of on this Universal thing and I wasn't interested in anything else.

Q Did you tell him specifically what you had in mind?

A I am talking about Universal Lubricants, yes, sir.

Q Did you tell him specifically about any of these so-called misrepresentations?

A You bet, yes, sir.

Q What they were?

A I told him about the forming of the new company because we could get product. Basically what we talked about here. Richard and Mr. Sorrells were in my office in Waco when this took place.

Q When was that?

A It was about June or July, somewhere in there.

Q Of '76?

A '75.

Q '75?

A I believe—wait, we bought the company in '75. It must have been right after we filed with Mr. Davis, it must have been about May or June of '76, right.

Q And that's the first time that you had said anything to him?

A Oh, no, we had telephone conversations about paying the bills and so on.

Q So Mr. Stokley then did know that you were claiming that there was misrepresentation?

A Yes, sir.

Q So the reason that you just testified about for not filing the pleadings to take his deposition and you didn't want him to suspect that you were saying anything about misrepresentation and you had already told him, hadn't you?

A Mr. Andress, we tried to get the truth out of Mr. Stokley and the only way we could do it was through a deposition and if we filed that in the pleading he would go to his attorney and receive advice—we wanted to get the truth out of him and the only way we could do it was in the deposition and if we had put that fraudulent remark in the pleadings he would have known about it and we wouldn't have got the truth out of him.

Q He knew about it because you told him about it, didn't you?

A He knew about it between his and my conversations which was without counsel. I talked to Richard, in fact, Richard came to Waco one other time prior to that.

Q *Now tell me, was this conversation before you agreed to pay him $40,000.00?*

A That was in your office, sir, we talked about it.

Q *It was in my office that you agreed to pay him $40,000.00?"* (Emphasis ours).

It is well settled in Texas that evidence which shows an offer in compromise upon the issue of liability between the parties is improper and inadmissible, therefore, the statement by counsel concerning the $40,000 was error. *Parks v. Benson Co., Builders,* 393 S.W.2d 700 (Tex.Civ.App.—Fort Worth 1965, writ ref. n. r. e.); *Spiritas v. Robinowitz,* 544 S.W.2d 710 (Tex.Civ.App.—Dallas 1976, writ ref. n. r. e.); *Standard Insurance Company v. Thomas,* 383 S.W.2d 447 (Tex.Civ.App.—Tyler 1964, no writ).

We must resolve whether the trial court's refusal to declare a mistrial under the circumstances presents a reversible error.

The testimony concerning the $40,000 compromise offer was not the result of an unresponsive answer of a witness nor was it even an answer given by a witness. The matter of the offer of compromise was directly injected into the evidence, not once but twice, by the experienced trial counsel of appellee. Counsel for appellee in directing such a question to the witness could

# 604

have had no other motive than to convey to the jury that Spanos had admitted liability.

Upon the whole record, we believe that the improper question was not harmless but in the language of Rule 434, T.R.C.P., "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." *Howsley & Jacobs v. Kendall*, 376 S.W.2d 562 (Tex.1964); *Southwestern Greyhound Lines v. Dickson*, 149 Tex. 599, 236 S.W.2d 115 (1951).

The judgment is reversed and the cause remanded.