**Minerva Jean CHILDS, Independent Executrix of the Estate of Robert M. Martindale, Deceased, Appellant,**

v.

**TAYLOR COTTON OIL COMPANY, Appellee.**

**No. 1409.**

Court of Civil Appeals of Texas, Tyler.

Jan. 29, 1981.

Rehearing Denied March 12, 1981.

Henry C. Kyle, Kyle & Walker, San Marcos, for appellant.

John F. Hamje, III, Milner & Smith, Austin, for appellee.

McKAY, Justice.

This is an appeal from a suit brought by Taylor Cotton Oil Company (Taylor) against the Estate of Robert M. Martindale, deceased (Martindale), on sworn account for goods and materials sold to Martindale. Martindale counterclaimed for alleged balance due on the account, for offset for usurious interest, and to remove cloud from title to certain real estate. Trial was to the court; judgment was rendered for Taylor for $20,489.54, prejudgment interest, and attorney's fees of $5,000, and Martindale appeals.

Taylor alleged Martindale was indebted to it in the sum of $20,489.84, and itemized a long list of debits and credits over a ten year period. Martindale counterclaimed (also called cross-action), with a like itemized list, alleging Taylor owed Martindale $10,071.07.

During the period involved in this suit, 1962 to 1972, Taylor was operating a cotton oil mill, and was dependent upon purchases of cotton seed from cotton gins for raw material for the mill. Martindale operated two gins during the period—North Martindale gin and Santa Clara gin. Martindale sold cotton seed to Taylor and Taylor sold bagging and ties for baling cotton to Martindale. At times Taylor also made cash advances to Martindale, and bags and ties were sold to Martindale on credit. Cash advances would sometimes be made by Taylor to Martindale in the spring—probably April—and the cotton seed would not be delivered to Taylor until July or August. At the end of the ginning season if Martindale owed Taylor more than Taylor owed Martindale, the balance was carried forward to the next July and August by Taylor.

Payments on a note owed by Martindale to an Austin bank were made by Taylor in 1965 and in 1967, each in the amount of $8,000. Payment was made to Calcasieu Lumber Company in 1968 to pay Martindale's indebtedness to Calcasieu in the sum of $18,220.86, a part of which was for indebtedness other than the bank note. Taylor's witness Stiles testified that Martindale never directed Taylor how to apply any payments made to Taylor by Martindale in cash or cotton seed, and that any advance made to Martindale was payment for cotton seed to be delivered later.

The trial court made extensive findings of fact and conclusions of law.[1]

1. "FINDINGS OF FACT

1. Robert M. Martindale, Decedent, died January 21, 1972.

2. Letters Testamentary were issued to Minerva Jean Childs, Independent Executrix of the Estate of Robert M. Martindale, Deceased, Defendant, on March 10, 1972.

3. Taylor Cotton Oil Company, Plaintiff, is a Texas corporation.

4. Plaintiff filed its claim against the Estate of Robert M. Martindale, Deceased, in the amount of $27,549.58 plus interest in Cause No. 4281 in the County Court of Hays County, Texas, on August 23, 1973.

5. Defendant rejected Plaintiff's claim on September 22, 1973.

6. Plaintiff filed its original petition in this cause on October 1, 1973.

7. Decedent owned and operated two commercial cotton gins known as the N. Martindale Gin Company and the Santa Clara Gin Company.

8. Plaintiff was in the business of processing cottonseed for sale.

9. From August 2, 1962, through March 29, 1972, the Decedent sold to Plaintiff cottonseed for processing and sale.

10. During the same period Plaintiff sold to the Decedent patterns of bags and ties for packaging bales of cotton ginned at the Decedent's plants.

11. It is a custom in the cotton oil industry for cotton oil mills to sell to cotton gins they do business with patterns of bags and ties for packaging bales of cotton (sic).

Note 1—Continued

12. During the same period Plaintiff maintained in the form of account ledgers a systematic record of all transactions occurring between the Plaintiff and the Decedent.

13. Plaintiff maintained one ledger recording all of its transactions with the Santa Clara Gin Company and another ledger recording all of its transactions with the N. Martindale Gin Company.

14. The Decedent sold cottonseed to the Plaintiff and the Plaintiff either paid for the cottonseed or gave the Decedent credit on the account for each purchase.

15. The Decedent was charged on account for all of his purchases of patterns of bags and ties.

16. Plaintiff often made cash advances to the Decedent which were recorded on the ledgers.

17. These advances were made for the purpose of assisting the Decedent with his start up costs and other expenses in the expectation that the Decedent would furnish sufficient cottonseed to liquidate any deficit on the account.

18. It is a custom in the cotton oil industry for cotton oil mills to make cash advances to those cotton ginners they purchase seed from.

19. Cotton ginning is related to the agricultural industry and, therefore, subject to the economic ups and downs of said industry.

20. Because it is related to the agricultural industry, it is almost impossible for the cotton ginners to find someone willing to extend credit to the ginner except for the cotton oil miller the ginner deals with.

21. Without cash advances for the mills, cotton ginners would not be able to continue to do business.

22. The cotton oil mills would not be able to do business without a source of cotton seed.

23. Plaintiff made payments to North Austin State Bank, Austin, Texas, and Calcasieu Investment Company, Austin, Texas, on behalf of the Decedent which were either charged to the Decedent as advances or were treated as payments for cottonseed.

24. North Austin State Bank and Calcasieu Investment Company were creditors of the Decedent at the time the Plaintiff made the payments on his behalf.

25. It is a custom in the cotton oil industry for cotton oil mills to make payments to creditors of those cotton ginners they do business with and treat such payments as advances on or payments for cottonseed.

26. It was the practice of the Plaintiff and the Decedent to defer the payment of the amount due Plaintiff at the end of each ginning season to the next ginning season in expectation that the Defendant would furnish sufficient cottonseed to Plaintiff to reduce any deficit on the account.

27. It is a custom in the cotton oil industry that cotton oil mills defer the payment of the amount due the mill by the cotton ginner from ginning season to ginning season in expectation that the ginner will sell the miller enough cottonseed to reduce the balance due.

28. Cotton is ginned during the summer and fall of each year.

29. The Plaintiff did not require the Decedent to pay for the patterns of bags and ties upon delivery.

30. It is a custom in the cotton oil industry for cotton mills not to require the cotton ginners to pay for patterns of bags and ties upon delivery.

31. The Plaintiff and the Decedent entered into an oral agreement to the effect that interest at varying rates would accrue on the unpaid balance on the account.

32. Plaintiff has waived any claim it has to interest which might be due pursuant to said oral agreement.

33. Neither the Decedent nor the Defendant paid interest on the account to the Plaintiff.

34. The Decedent was furnished with statements in connection with all transactions which are recorded on the ledgers.

35. The Decedent acquiesced (sic) in and accepted without objection the transactions as recorded on the ledgers.

36. The last transaction recorded on the ledgers is dated March 29, 1972.

37. The balance due Plaintiff by Defendant according to Plaintiff's ledgers is $20,489.54.

38. The Plaintiff made demand of the Defendant for payment more than 30 days prior to the filing of this action.

39. The Defendant has failed to pay the balance reflected on the Plaintiff's ledgers.

40. Plaintiff has employed the law firm of Milner and Smith, Professional Corporation, to sue on the account.

41. Plaintiff has incurred attorney's fees in prosecuting this action to trial in the amount of $8,778.00.

### CONCLUSIONS OF LAW

1. All legal prerequisites to the filing of this action have been satisfied.

2. This court has jurisdiction to hear this matter on the merits.

3. The items described in Exhibit "A" attached to Plaintiff's Sixth Amended Original Petition show with reasonable certainty the nature of each item sold, the date of each sale and the charge therefor.

4. The Plaintiff and Decedent were merchants.

5. The transactions between the Plaintiff and Decedent were in the form of a mutual and current account concerning the trade of merchandise between merchant and merchant as provided by Article 5527(3), Texas Revised Civil Statutes.

6. All advances made by Plaintiff to the Decedent are part of the mutual and current account.

7. All payments made by Plaintiff to the creditors of the Decedent which were charged to the Decedent are part of the mutual and current account.

Martindale requested further findings and conclusions which were refused by the trial court.

Martindale, appellant here, asserts that the controlling issue in this case is one of law—whether Sec. 2.725, Tex.Bus. & Comm. Code (U.C.C.)[2] or Art. 5527(3)[2], Tex.Rev. Civ.Stat. is applicable to the facts of this case. Sec. 2.725(a) provides: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." It also provides by agreement the parties may reduce the period but may not extend it. Art. 5527(3) provides: "There shall be commenced and prosecuted within four years after the cause of action shall have accrued * * * actions * * * upon mutual and current accounts concerning the trade of merchandise between merchant and merchant, their factors or agents; and the cause of action shall be considered as having accrued on a cessation of the dealings in which they were interested together."

The trial found that the transactions between Taylor and Martindale "were in the form of a mutual and current account concerning the trade of merchandise between merchant and merchant," that Art. 5527(3) applied and that the limitations period began to run upon the cessation of dealings between the parties on March 30, 1972.

Martindale points out that Sec. 2.102, U.C.C., provides that "(u)nless the context otherwise requires, this chapter [Sales] applies to transactions in goods * * *," and that such section together with Sec. 2.106(a) [Definitions] demonstrate that the questions here presented are controlled by the U.C.C.-"A 'sale' consists in the passing of title from the seller to the buyer for a price." It is also pointed out by Martindale that Sec. 2.310(1) provides, "Unless otherwise agreed payment is due at the time and place at which the buyer is to receive the goods even though the place of shipment is the place of delivery." Martindale further maintains that Sec. 2.507 and under Sec. 2.725(b) the four year period begins to run from the time of tender of delivery of goods.

Taylor contends that the dealings between Taylor and Martindale comprise a mutual and current account between merchants within Art. 5527(3), that advances

8. The Plaintiff did not charge the Defendant a usurious rate of interest on the account.

9. Any cause of action against the Plaintiff which the Decedent might have had for penalties pursuant to Article 5069–1.06, *Texas Revised Civil Statutes*, did not survive his death.

10. The defendant is not due any offset for any amount of usurious interest which might have been charged by the Plaintiff.

11. The Defendant failed to sustain her burden in connection with showing that the parties did not enter into an agreement with regard to the charging of interest on amounts due Plaintiff on the account.

12. Neither § 2.201 nor § 26.01 of the *Texas Business and Commerce Code* renders any agreement arising between the Plaintiff and the Decedent as a result of their course of dealing unenforceable.

13. Section 2.725, *Texas Business and Commerce Code* does not apply to the transactions occurring between the Plaintiff and the Decedent.

14. Article 5527(3), *Texas Revised Civil Statutes*, applies to the transactions occurring between the Plaintiff and the Decedent.

15. The limitations period began to run on March 30, 1972, upon the cessation of dealings between the parties.

16. The Plaintiff and the Decedent engaged in a "course of dealing" as defined in § 1.205, *Texas Business and Commerce Code*, which gave rise to an agreement that payment by the Decedent for items listed in Plaintiff's statement of account was not due on delivery but at the end of the next ginning season if the Decedent did not sell enough cottonseed to Plaintiff to pay off the account during the current ginning season.

17. Article 5527(3), *Texas Revised Civil Statutes*, was not repealed as a result of the enactment of Section 10–103, *Texas Commercial Code*, but is still in full force and effect.

18. The transactions between the Plaintiff and the Decedent conformed with the usage of trade in the cotton oil industry.

19. A reasonable attorney's fee for the Plaintiff's attorneys is $5,000.00.

20. Plaintiff should recover from the Defendant $5,000.00 for its attorney's fees incurred in pursuing this action.

21. Defendant is indebted to Plaintiff in the amount of $20,489.54, plus interest on that amount from January 1, 1973 at the rate of Six Percent (6%) per annum through October 8, 1979."

2. Sec. and Art. are to U.C.C. and Tex.Rev.Civ. Stat. respectively unless otherwise indicated.

made on the account by Taylor to Martindale are part of the account sued on and that payments to the Austin bank and Calcasieu by Taylor on behalf of Martindale became obligations of Martindale to Taylor.

The issue is thus drawn: Did the statute of limitations begin to run each time there was a transaction between Taylor and Martindale, or did it begin to run on cessation of the dealings between them? There appears to be no argument that the four year statute applies here—whether under Sec. 2.725(b) [a cause of action accrues when the breach occurs, and a breach of warranty occurs when tender of delivery is made] or under Art. 5527(3). We are of the opinion that Art. 5527(3) controls, and we therefore affirm the judgment of the trial court. In our view Art. 5527(3) is not inconsistent with U.C.C., but, instead, supplements it.

While U.C.C. Sec. 10–103 provides that "except as provided in the following section, all acts and parts of acts inconsistent with this Act are hereby repealed," Art. 5527 was not named as repealed or excepted. Furthermore, apparently the Legislature did not intend for the U.C.C. to repeal Art. 5527 inasmuch as the 60th Legislature enacted the U.C.C. in 1967, and then the 66th Legislature amended Art. 5527 in 1979. This last expression of the Legislature caused Art. 5527 to conform to the U.C.C. in that actions for debts have a four year limitation. However, the additional provision of 5527(3) providing that on mutual and current accounts between merchants the cause of action accrues on cessation of dealings was retained by re-enactment.

Martindale argues not only that Sec. 2.725 applies to the instant fact situation but that custom and usage cannot be used to alter its terms and that limitations began to run at the time and place each shipment of goods was delivered to Martindale; he further complains that a holding contrary to such argument would be in violation of the terms of the sale since the statement of account to Martindale attached to Taylor's pleading provided "Terms: Net Cash." We do not agree with Martindale's argument and complaint.

The trial court found that during the ten year period Martindale sold cotton seed to Taylor during ginning season, that Taylor sold bagging and ties to Martindale, that advance payments were made to Martindale and that payments to others were made by Taylor for Martindale, and that a record of all these transactions was properly kept on Taylor's books and records. These facts, in our view, constitute "mutual and current accounts concerning the trade of merchandise between merchant and merchant," and "the cause of action shall be considered as having accrued on a cessation of the dealings . . ." The trial court found that Martindale "acquiesced in and accepted without objection the transactions as recorded on the ledgers," and concluded the parties were merchants.

Martindale further contends that the deferment of the amount owed by him at the end of the ginning season to the next season was a new promise to pay resting in parole and that the two year statute of limitation would apply. We disagree. The trial court found that there were mutual and current accounts between merchants which would not accrue the cause of action until cessation of dealings.

It is further maintained by Martindale that the trial court erred in not finding his requested additional findings of fact 1 through 10; that the court erred in holding that Taylor did not charge Martindale a usurious rate of interest on the account; and that there was error in holding that Martindale is not due an offset for usurious interest as a matter of law. These matters are not controlling issues in this case. While a judge may be required to make findings on material issues, it has been held that "he is not 'required to make findings on evidentiary as distinguished from controlling matters.' *Plaza Co. v. White*, Tex. Civ.App., 160 S.W.2d 312, 313 (writ refused)." *Santos v. Irick*, 283 S.W.2d 251, 253, (Tex.Civ.App.-Galveston 1955, no writ.)

Martindale's first nine requested additional findings of fact are evidentiary matters by which he seeks to support an

offset by his claim of usury. The record reveals that Taylor charged Martindale interest on two occasions—$392 in December, 1965, and $3,957.88 in July, 1969. The witness James F. Stiles, vice president of Taylor, testified that Taylor was "not asking for interest in the amount we are suing for," and "that amount does not include any interest." He later said: "We are not suing for interest." Apparently, the above figures were included in Taylor's pleading, but it seems without question any claim for interest on the amount sued for was abandoned.

Under Art. 5069–1.03 when no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all open accounts from January 1 following the date made. Under the record here Martindale had the burden of establishing that there was no agreement to charge interest on the balance of the account, *Miles v. W. C. Roberts Lumber Co.*, 561 S.W.2d 256, 258 (Tex.Civ.App.-Eastland 1978, writ ref'd n.r.e.), and Martindale failed to sustain his burden. The trial court found there was an oral agreement to charge interest at varying rates and that Taylor has waived any claim it has to interest which might be due pursuant to said oral agreement. We believe the trial court's finding was a reasonable deduction from the evidence in the record. Assuming, arguendo, that an excessive rate of interest was charged Martindale, any cause of action which he may have had as a result of such charge was abated upon his death. Usury statutes are penal in nature and are strictly construed, and penalties for excessive interest charges are restricted to immediate parties to the transaction creating the usury defense. Usury defense is personal to the debtor. *Houston Sash & Door Co. v. Heaner*, 577 S.W.2d 217, 222 (Tex.1978). It does not survive the death of the obligor. *Wright v. E–Z Finance Co.*, 267 S.W.2d 602, 607 (Tex.Civ.App.-Dallas 1954, writ ref'd n.r.e.).

Martindale contends that Art. 2226 contains no provision for recovery of attorney's fees for prosecution of a claim on a mutual and current account concerning trade of merchandise between merchant and merchant, nor on special contract. We disagree with this contention. A mutual and current account between merchants is one type of open account, 1 Tex.Jur.3d Accounts and Accounting § 2, p. 123, and a claim based upon an open account may be brought as a sworn account. Art. 2226 provides for the recovery of attorney's fees in sworn account cases.

Martindale further argues that the award of attorney's fees by the court under Art. 2226 is penal in nature and therefore does not survive the death of the parties. It was held in *Smith v. Basham*, 227 S.W.2d 853, 857 (Tex.Civ.App.-Dallas 1950, aff'd 233 S.W.2d 297 on other grounds) that awarding of attorney's fee was a penalty, and that such penalty did not survive the death of the wrongdoer. However, since that decision Art. 2226 has been amended three times, the latest in 1979, and the last sentence now reads, "This Act shall be liberally construed to promote its underlying purposes." The Legislature now says that Art. 2226 will not be strictly construed, but, to the contrary will be liberally construed. We believe that means that recovery for attorney's fees may be allowed in a case of this nature.

We have carefully examined all of Martindale's points of error, and we find no merit in them.

Judgment of the trial court is affirmed.