John L. **SHOOK**, Appellant,

v.

**REPUBLIC NATIONAL BANK OF DALLAS**, Appellee.

No. 1490.

Court of Appeals of Texas, Tyler.

Nov. 19, 1981.

Rehearing Denied Jan. 7, 1982.

Second Motion Rehearing Denied Feb. 11, 1982.

Tom Thomas, Dallas, for appellant.

Bruce W. Bowman, Jr., Dallas, for appellee.

McKAY, Justice.

This appeal is from a judgment notwithstanding the verdict against appellant John L. Shook who sued appellee Republic National Bank of Dallas alleging usury accomplished through a shell corporation and economic duress in the execution and renewals of a corporate note and in the forced sale of collateral. Appellee, who was awarded $310,395.09 on its counterclaim for principal and interest against Shook, cross-appeals claiming that the trial court erred in considering several defensive issues and in admitting evidence. Appellee also claims that appellant's death caused any usury cause of action he may have had to abate.

John L. Shook (Shook) had been a banking customer of Republic National Bank of Dallas (Republic) since the early 1970's. Shook, a Dallas attorney, was personally indebted to Republic for $698,500.00 on July 30, 1974. On that date, Shook executed a personal renewal note payable to Republic

in this amount. This renewal note was due August 30, 1974, and was partially collateralized with Shook's stock in Republic Financial Services, Inc. (R.F.S., Inc.). The R.F.S., Inc. stock had been pledged long before July of 1974; however, it had declined in value to the extent that it was insufficient to pay the principal of the note and Republic deemed Shook's loan a "problem loan."

Prior to the execution of the July 30 renewal note, Republic's senior Vice President and Shook's longstanding loan officer, Dewey H. Dean, Jr. (Dean), informed appellant that Republic would be unable to extend him further credit at the interest rate lawfully chargeable by Republic to an individual.[1] Accordingly, Dean and Shook attempted to find a solution that would prevent Republic from having to call appellant's loan and foreclose his collateral. At this point the facts are in dispute; Republic asserts that Shook suggested the use of a corporation to assume his personal debt, while Shook maintains that Republic required the use of a corporation to assume his individual debt.

In any event, on July 22, 1974, Shook organized J.L.S., Inc. It is undisputed that J.L.S., Inc. was a valid Texas corporation, that Articles of Incorporation were filed, and that a corporate resolution was delivered to Republic showing that the Board of Directors of J.L.S., Inc. had approved a loan to it. It is likewise uncontroverted that J.L.S., Inc. was capitalized at minimum capitalization requirements, had no business activity, no income, no shareholders or directors meetings, and no employees.

On August 30, 1974 Shook executed, on behalf of J.L.S., Inc., a $698,500.00 note payable to Republic as renewal and extension of appellant's personal note. Shook then signed a personal guarantee of the J.L.S., Inc. note. The corporate renewal bore interest at Republic's prime rate plus three percent (3%) per annum.

Thereafter, the proceeds of the August 30, 1974 J.L.S., Inc. loan were deposited to an account styled J.L.S., Inc. The funds in the J.L.S., Inc. account were immediately transferred to Shook's account and simultaneously to Republic to pay off Shook's personal note. The J.L.S., Inc. bank account was closed on March 12, 1975.

Following the execution of the J.L.S., Inc. note and up until the time suit was filed, Shook sold portions of the R.F.S., Inc. stock to reduce the principal and interest owed on the J.L.S., Inc. note. Shook also sold other personal assets to reduce the J.L.S., Inc. debt.

Shook sued Republic on February 13, 1979 alleging that J.L.S., Inc. was used as a device to evade the Texas usury laws. He alleged that Republic required him to form this corporation to allow Republic to charge the higher corporate rate of interest; that Republic knew he was unable to obtain refinancing of his personal debt elsewhere; and, that had he not agreed to incorporate he would have lost the collateral in foreclosure proceedings. Shook further pled that Republic forced him to sell the R.F.S., Inc. stock collateralizing the J.L.S., Inc. note. Shook sought recovery of twice the amount of usurious interest he had paid, as well as actual and exemplary damages for duress. Republic filed denials, affirmative defenses, and a counterclaim for the principal and interest owing on three notes as well as ten percent (10%) contractual attorney's fees.[2]

---

1. Since Republic is a national bank, the National Banking Act governs the permissible interest rates it may charge. 12 U.S.C.A. § 21 *et seq.* (Supp. 1980). 12 U.S.C.A. § 85 provided, at the applicable times, that the maximum rate of interest a national bank could charge an individual was the higher of the rate allowable under our state law or one percent (1%) in excess of the discount rate on ninety-day commercial paper in effect at the Dallas Federal Reserve Bank.

2. All three notes involved in this case arise out of the J.L.S., Inc. loan transaction. The first note represents a charge-off by bank examiners of the portion of the original J.L.S., Inc. loan representing the excess of the J.L.S., Inc. debt over the market value of the R.F.S., Inc. stock collateralizing the loan. At the time Shook sued Republic the principal balance on this note was $152,000.00. The second note represents the remaining balance of the J.L.S., Inc. loan which at the time Shook filed suit had been reduced to $25,182.78. The third note is

Trial was to a jury. The jury found that Shook and Republic had agreed to transfer Shook's personal loan to J.L.S., Inc. so Republic could charge a rate of interest higher than that allowed to be charged an individual; that J.L.S., Inc. was used as a device or subterfuge to allow Republic to charge Shook this higher rate of interest; that Shook, not J.L.S., Inc., was the "true borrower" in the J.L.S., Inc. loan transaction; that Republic knew that Shook was the "true borrower"; that Shook sold 10,675 shares of R.F.S., Inc. as a result of duress; that after such duress had ceased to exist, Shook had waived his duress claim; and that Shook is estopped by his conduct from recovering on his duress claim. The trial court entered judgment against Shook and for Republic, and awarded Republic $310,-395.09 as principal and accrued interest owing on the notes and $29,779.51 as contractual attorney's fees.

In his first two points of error, Shook contends the trial court erred in rendering judgment against his usury claim because the jury's findings to special issues one through four[3] are supported by the evidence and therefore allow him to recover upon his usury claim. Republic argues that special issues one through four are immaterial and cannot form the basis of a judgment favoring Shook because Article 1302–2.09, Tex.Rev.Civ.Stat.Ann. (Vernon 1980), precludes judicial inquiry into a corporate loan within corporate interest rate limits and signed by a guarantor. We agree with appellant and sustain his first two points of error.

Article 1302–2.09 provides as follows:

Notwithstanding any other provision of law, corporations, domestic or foreign, may agree to and stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month, on any bond, note, debt, contract or other obligation of such corporation under which the original principal amount is Five Thousand Dollars ($5,000) or more, or on any series of advances of money pursuant thereto if the aggregate of sums advanced or originally proposed to be advanced shall exceed Five Thousand Dollars ($5,000), or on any extension or renewal thereof, and in such instances, the claim or defense of usury by such corporation, its successors, guarantors, assigns or anyone on its behalf is prohibited; however, nothing contained herein shall prevent any charitable or religious corporation from asserting the claim or interposing the defense of usury in any action or proceeding.

Republic correctly points out that as a general rule a lender may condition the making of a loan upon the requirement of a

---

for $74,985.38 of interest accrued on the original J.L.S., Inc. loan which Shook was unable to pay.

3. Special issues one through four were submitted and answered as follows:

*Special Issue No. 1*

Do you find from a preponderance of the evidence that Plaintiff Shook and Defendant Republic agreed to transfer Shook's personal loan to the corporation J.L.S., Inc. so that Republic could charge Shook an annual rate of interest which exceeded the higher of 10% per annum or 1% in excess of the discount rate on 90-day commercial paper in effect at the time? Answer "We do" or "We do not".
ANSWER: <u>WE DO.</u>

\* \* \* \* \* \*

*Special Issue No. 2*

Do you find from a preponderance of the evidence that the corporation of J.L.S., Inc. was used as a device or subterfuge, as those words are defined herein, to allow Defendant Republic to charge Plaintiff Shook an annual rate of interest which exceeded the higher of 10% per annum or 1% in excess of the discount rate on 90-day commercial paper in effect at the time? Answer "We do" or "We do not".
ANSWER: <u>WE DO.</u>

\* \* \* \* \* \*

*Special Issue No. 3*

Do you find from a preponderance of the evidence that Plaintiff Shook, rather than the corporation J.L.S., Inc., was the true borrower in the J.L.S., Inc. loan transaction? Answer "We do" or "We do not".
ANSWER: <u>WE DO.</u>

\* \* \* \* \* \*

*Special Issue No. 4*

Do you find from a preponderance of the evidence that Defendant Republic knew that Plaintiff Shook was the true borrower in the J.L.S., Inc. loan transaction? Answer "We do" or "We do not".
ANSWER: <u>WE DO.</u>

corporate borrower. This condition, in itself, does not render the loan usurious although the purpose of requiring incorporation is to allow the lender to charge the higher corporate rate of interest. *Houston Furniture Distrib., Inc. v. Bank of Woodlake*, 562 S.W.2d 880, 883 (Tex.Civ.App.—Houston [1st] 1978, no writ). *See American Century Mortgage Investors v. Regional Center, Ltd.*, 529 S.W.2d 578, 582 (Tex.Civ. App.—Dallas 1975, writ ref'd n.r.e.). It is also the rule that the mere formation of a corporation to obtain an otherwise usurious loan does not normally render the transaction violative of Texas usury laws since the lender's requirement of a corporate borrower is an attempt to comply with the law to obtain a result desired by the parties and permitted by law. *Skeen v. Glenn Justice Mortgage Co.*, 526 S.W.2d 252, 256 (Tex.Civ. App.—Dallas 1975, no writ), citing *Jenkins v. Moyse*, 254 N.Y. 319, 172 N.E. 521 (1930).

■ Corporate loan documents, however, may not be used as a fiction to conceal a usurious transaction. *Micrea, Inc. v. Eureka Life Ins. Co. of America*, 534 S.W.2d 348, 354 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.). Furthermore, a corporation may not be used as a subterfuge to cloak a usurious loan to an individual. *Franklin Offices, Inc. v. Harding*, 579 S.W.2d 254, 255 (Tex.Civ.App.—Dallas 1979, no writ). Usurious transactions are uniformly condemned in Texas no matter how they are disguised. *Western Guaranty Loan Co. v. Dean*, 309 S.W.2d 857, 863 (Tex. Civ.App.—Dallas 1957, writ ref'd n.r.e.). Texas, therefore, looks to substance, not form, to determine whether a transaction is in fact usurious. *Commercial Securities Co. v. Rea*, 130 Tex. 11, 105 S.W.2d 872, 875 (1937); *Independent Lumber Co. v. Gulf*

*State Bank*, 299 S.W. 939, 942 (Tex.Civ.App. —Galveston 1927, writ ref'd).

■ Republic relies upon eight Texas cases for the proposition that a corporate loan within corporate interest rate limits is shielded from judicial scrutiny and that special issues one through four are therefore immaterial. In our view, these special issues are not immaterial. We feel Republic's reliance upon these cases is misplaced for three reasons.

First, and most importantly, many of the cases cited by Republic specifically acknowledge limitations on the use of the corporate form. *See, e.g., American Century Mortgage Investors v. Regional Center, Ltd., supra* at 580; *Houston Furniture Distrib., Inc. v. Bank of Woodlake, supra* at 883; *Franklin Offices, Inc. v. Harding, supra* at 255. Too, the cases relied upon by Republic involve corporate borrowers with corporate business purposes for the loan in question. A critical and distinguishing factor in the case at bar is the undisputed fact that the J.L.S., Inc. loan was made merely to pay off Shook's pre-existing loan.[4] This case does not involve a fresh extension of corporate credit; rather, it involves a corporate renewal of Shook's individual debt whereby his personal loan merely changed in form to a corporate loan.[5] Moreover, Republic seems to ignore the fact that in Texas the substance of an allegedly usurious transaction controls over the form.

Dean testified that Republic never contemplated that J.L.S., Inc. would repay any of the loan and that Republic looked strictly to Shook for payment of the principal and interest, and for the collateral. In memoranda admitted into evidence, Republic referred to the J.L.S., Inc. loan as Shook's

**4.** In jurisdictions expressly sanctioning the deliberate use of a corporate borrower to facilitate charging a higher rate of interest, there is a developing trend limiting this practice to situations where a business purpose for the loan is present. Comment, *Using a "Dummy" Corporate Borrower Creates Usury and Tax Difficulties*, 28 S.W.L.J. 437, 443 (1974).

**5.** Dean testified that the J.L.S., Inc. loan was established as follows: On August 30, 1974,

Shook executed a corporate note for $698,-500.00 as President of J.L.S., Inc. He then personally guaranteed the note. Republic then credited the account of J.L.S., Inc. with the loan proceeds, debited the bank account in this amount, credited and debited Shook's personal account in this amount, and credited the bank account with the pay off of Shook's personal note.

debt. Dean further testified that Republic did not care whether J.L.S., Inc. ever had any business activity, did not consider the financial condition of J.L.S., Inc., and that J.L.S., Inc. was a shell corporation. After the J.L.S., Inc. loan transaction, no new source of repayment or collateral was present.

Second, the cases relied upon by Republic are appeals from temporary injunctions, summary judgments, or instructed verdicts and in each one evidence of subterfuge, fraud, or illegality was either absent or was inadequate to warrant further inquiry by the court. *See, e.g., American Century, supra* at 580; *R. B. Bradley v. Houston State Bank,* 588 S.W.2d 618, 622 (Tex.Civ. App.—Houston [14th] 1979, writ ref'd n.r. e.). In the case at bar, there are jury findings that Shook was the true borrower in the J.L.S., Inc. loan transaction and that J.L.S., Inc. was a subterfuge to allow Republic to charge Mr. Shook, the true borrower, a usurious rate of interest.

Third, the corporate borrowers in the cases cited by Republic were conducting ongoing businesses. J.L.S., Inc. conducted no business and Republic, according to Dean, did not care whether it did so. Shook testified that J.L.S., Inc. never had a shareholder's or director's meeting, elected no officers, enacted no by-laws, had no place of business, hired no employees, prepared no financial statements, and issued no stock certificates.

■ Republic's second contention is that special issue two was defective because it does not require that both parties intended that usurious interest be paid. We hold that any error in this omission did not amount "to such denial of rights" that it was harmful. Rule 434, Tex.R.Civ.P. Republic also complains that special issue two failed to ask whether the parties sought to evade the usury laws. Republic has waived any error because it did not object to this omission. Tex.R.Civ.P. 272.

■ Republic next argues that special issues three and four violate the parol evidence rule because the loan documents state that J.L.S., Inc., not Shook, was the borrower. This argument is without merit. Shook was entitled to show by parol evidence that the transaction was usurious. *Day v. Garland Chrysler-Plymouth, Inc.,* 460 S.W.2d 272, 275 (Tex.Civ.App.—Dallas 1970, no writ).

■ Where a loan agreement provides on its face for the payment of no more than legal interest, the party pleading usury must show the existence of some agreement, device, or subterfuge to charge usury and that both parties contemplated that purpose. *Shipman v. Wright,* 3 S.W.2d 519, 521 (Tex.Civ.App.—Dallas 1928, writ ref'd); *See, e.g., American Century Mortgage Investors v. Regional Center, Ltd., supra* at 583; *Franklin Offices, Inc. v. Harding, supra* at 256. Since the loan to J.L.S., Inc. was not usurious on its face, Shook had the burden to show it was used as a means to circumvent the usury law.

■ It is not clear from the record whether the trial court entered a judgment notwithstanding the verdict or disregarded the jury's answers to special issues one through four. In any event, in considering the trial court's action in granting a judgment notwithstanding the verdict or in disregarding jury findings, we must regard all evidence and testimony in the light most favorable to the findings. *Masco Int'l Inc. v. Stokley,* 567 S.W.2d 598, 600 (Tex.Civ. App.—Eastland 1978, writ ref'd n.r.e.); *Frost Nat'l Bank v. Nicholas & Barrera,* 534 S.W.2d 927, 932 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.). The trial court's entry of a judgment notwithstanding the verdict or action in disregarding jury findings can be upheld only if there is no evidence to support the jury's answers to the submitted special issues; or, if the issues were supported by the evidence, they were immaterial. *Frost Nat'l Bank v. Nicholas & Barrera, supra.* As stated hereinbefore, we do not believe special issues one through four are immaterial. In light of the facts presented, we hold that the evidence and testimony presented is sufficient to uphold the jury's findings. Appellant's points of error one and two are therefore sustained.

Shook's third and fourth points of error assert that the provision of Article 1302–2.-09 denying the usury defense to a corporate guarantor is preempted by federal regulation of national banks and violates the Texas Constitution. In light of our disposition of Shook's first two points of error we need not rule upon his third and fourth points.

Shook, in his fifth through eighth points of error, and Republic, in its fourth through sixth crosspoints, assert various errors in the trial court's handling of Shook's economic duress claim growing out of the sales of R.F.S., Inc. stock. One of Shook's complaints is that the trial court erroneously refused to grant him judgment on his duress cause of action because no evidence or insufficient evidence supports the jury finding that he waived his economic duress claim. We overrule this point. Our disposition of this contention makes it unnecessary to rule upon the related points and crosspoints.

■ The Supreme Court of this State has directed that when both no evidence and insufficient evidence points of error are presented, this court should rule upon the no evidence point first since a no evidence ruling is subject to Supreme Court review. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). In reviewing a no evidence point we consider only the evidence and reasonable inferences which viewed in their most favorable light support the jury finding and disregard all evidence and reasonable inferences to the contrary. Calvert, " '*No Evidence' and 'Insufficient Evidence' Points of Error,*" 38 Texas L.Rev. 361 (1960); *Glover v. Texas Gen. Indem. Co., supra.*

Shook asserts economic duress arising out of the sales of 10,675 shares of R.F.S., Inc. stock between May 16, 1975 and February 12, 1977. These shares were sold to reduce the J.L.S., Inc. debt. Dean initially placed the orders to sell the shares through First Southwest Company (First Southwest), a brokerage firm. Shook executed and filed documents authorizing and reporting these sales with First Southwest and the Securities and Exchange Commission. Shook testified that he changed brokerage firms in 1977. Through this new brokerage firm, which he had selected, Shook himself ordered the sale of 7,000 additional shares of R.F.S., Inc. stock and executed the necessary papers. Furthermore, Shook executed renewal notes for and made interest payments upon the J.L.S., Inc. loan until the filing of this suit.

■ A waiver is the intentional relinquishment of a known right or conduct which warrants an inference of the relinquishment of the claimed right. *Barker & Bratton Steel Works v. North River Insurance Co.*, 541 S.W.2d 294, 296 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). Intentional conduct inconsistent with claiming a right suffices to waive that right. An implied waiver is established by clear, unequivocal, and decisive acts showing an intent to waive. Moreover, a waiver is implied to prevent fraud or inequitable consequences. *Estate of Blardone v. McConnico*, 604 S.W.2d 278, 282–83 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). We hold that Shook's conduct presented some evidence upon which the jury could conclude he had waived his duress claim.

In point of error number nine, Shook argues that the trial court erred in awarding Republic the amount of interest specified in the notes sued upon because it exceeded the stated amount sought in the pleadings. Shook's principal complaint is that the trial judge allowed Republic to amend its pleadings to reflect this higher rate of interest.

In Republic's counterclaim it sought interest accruing at stated amounts. The notes sued upon, containing rates of interest higher than that specified in the counterclaim, were admitted into evidence without objection. On March 10, 1980, the date judgment was entered, the court signed an "Order Allowing Trial Amendment and Amendment to Conform to Issues Tried Without Objection." The record reflects no motion to amend; however, it does show a letter dated February 20, 1980 from Shook's counsel to the court demonstrating counsel's knowledge that Republic wanted to

recover the interest contracted for in the notes.

■■■ Appellant is correct that notice and an opportunity to be heard generally must precede granting an amendment. The purpose of this rule is obviously to prevent unfair surprise. Tex.R.Civ.P. 63.

■■■ Amendments which correct former allegations but do not alter the grounds of recovery have little potential for surprising a litigant. 2 McDonald, *Texas Civil Practice* § 8.06 at 323 (2d ed. 1970). Where a party objects to the introduction of evidence, there can be no trial by implied consent. *Cannan v. Varn,* 591 S.W.2d 583, 586 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). However, a litigant who fails to object to evidence supporting a larger amount of recovery than that pleaded may not later claim surprise when the larger recovery is sought. Tex.R.Civ.P. 66 and 67. We hold that this amendment did not operate as a surprise to appellant for three reasons. First, appellant raised no objection to the introduction of the notes containing the higher contractual rate of interest. Second, the amendment merely corrected an earlier allegation and did not alter the ground of recovery. Third, appellant had actual notice of Republic's attempt to recover the higher rate of interest. We find no error in the court's allowance of Republic's amendment.

In Shook's final two points of error he contends that the trial court's award of attorney's fees is incorrect because under the circumstances it was unreasonable. We agree. The notes and guaranty sued upon provide for payment of not less than ten percent (10%) of the unpaid balance and interest of the notes as reasonable attorney's fees if the notes are placed in the hands of an attorney for collection. Shook by trial amendment affirmatively pleaded that an award of contractual attorney's fees would be unreasonable. The trial court awarded $29,779.51 in attorney's fees to Republic.[6]

Bruce Bowman, Republic's attorney, testified that he had represented Republic in collecting the notes in question. Bowman testified that 256 hours of partner's time and 17 hours of associate's time were spent on the suit. Bowman admitted, however, that in preparing and pursuing Republic's counterclaim upon the notes no more that 5 hours of time was spent totally, and all of this time was partner's time. Republic and Shook had stipulated that a reasonable hourly rate for partners was $90.00 an hour and for associates $60.00 an hour. Republic's first pleadings seeking recovery upon the notes were not filed until July 6, 1979; Shook had filed suit against Republic for usury and duress in February of 1979, some six months earlier, and all of Republic's pleadings before July 6, 1979 had been defensive ones.

■■■ Republic argues that the award of contractual attorney's fees was reasonable because its defense of Shook's usury and duress claims was necessary to collect the balance and interest due on the notes. This argument was made and rejected in *Espinoza v. Victoria Bank and Trust Co.,* 572 S.W.2d 816, 828 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). The *Espinoza* court reasoned that attorney's fees are recoverable in tort or contract actions only where provided by statute or by agreement. *See New Amsterdam Casualty Co. v. Texas Industries, Inc.,* 414 S.W.2d 914, 915 (Tex. 1967). We did not find, nor did the parties cite, any provision allowing recovery of attorney's fees for defending the type of suit Shook brought against Republic. The allowance, therefore, of attorney's fees must be limited to reasonable fees incurred in pursuing the collection of the notes owed Republic.

■■■ Our Supreme Court in *F. R. Hernandez Construction & Supply Co. v. National Bank of Commerce,* 578 S.W.2d 675, 676 (Tex.1979) stated:

---

**6.** Our review of the record indicates the attorney's fees award was determined as follows: The unpaid balance and interest on the notes totaled $310,039.51, ten percent (10%) of

which was calculated as attorney's fees and $1,260.00 was subtracted from that amount for discovery sanctions assessed against Republic.

Texas courts do not regard agreements to pay attorney's fees based on a percentage of the unpaid balance and interest on a promissory note as absolute promises to pay the contractual amount, but as contracts to indemnify the holder of the note for attorney's expenses incurred in collecting the principal and interest on the note . . . Consequently, the obligor of the note can challenge the reasonableness of contractual attorney's fees. (Citations omitted.)

The holder of the note may not recover the contractual amount where the obligor makes a "proper showing" that the fee should be reduced. A "proper showing" consists of pleading and proving that the contractual amount is unreasonable and proving a lesser amount that is reasonable under the circumstances. *F. R. Hernandez Construction & Supply Co. v. National Bank of Commerce, supra* at 677. *See also, Kuper v. Schmidt,* 161 Tex. 189, 338 S.W.2d 948 (1960).

■ Republic argues it is entitled to $29,779.51, representing the full ten percent of the principal and interest owed on the notes as contractual attorney's fees, because Shook failed to meet his burden of proof. We disagree. Shook's attorney elicited testimony from Bowman that no more than 5 hours of partner's time was spent in preparing Republic's counterclaim on the notes. The parties had stipulated to the reasonable hourly rate for partners. We hold that Shook adequately proved the unreasonableness of the contractual amount and a lesser reasonable amount.

■ The trial court is vested with wide discretion in awarding reasonable attorney's fees and its judgment may not be reversed without a clear showing that it has abused this discretion. This court may not set aside an award of attorney's fees simply because we would have allowed more or less. We do have authority, however, to review the entire record and determine, in light of our experience as lawyers and judges, whether a particular award of attorney's fees constitutes an abuse of discretion. *Knopf v. Standard Fixtures Co., Inc.,*

581 S.W.2d 504, 507 (Tex.Civ.App.—Dallas 1979, no writ); *Espinoza v. Victoria Bank and Trust Co., supra* at 828.

■ In determining the reasonableness of attorney's fees, the following factors may be considered: the nature of the case; any difficulties or complexities in the case; the importance of the case; the nature of the services required to be rendered by counsel; the amount of money involved; the client's interest at stake; the amount of time necessarily spent by counsel; the responsibility imposed upon counsel; and the skill and experience reasonably needed to perform the necessary services. *Golden v. Murphy,* 611 S.W.2d 914, 916 (Tex.Civ.App. —Houston [14th] 1981, no writ); *See Knopf v. Standard Fixtures Co., Inc., supra.*

■ Since we have determined that Republic may not recover attorney's fees for defending Shook's usury and duress claims, the only allowable attorney's fees are those incurred in collection of the notes. In light of Bowman's testimony that no more that five hours of partner's time was spent in pursuing Republic's counterclaim on the notes, we are convinced that the $29,779.51 contractual attorney's fees award is unreasonable and constitutes an abuse of discretion. Shook's final two points are sustained.

■ Republic contends by three crosspoints that it should have been allowed to plead, prove, and submit issues upon whether Shook waived or is estopped from asserting his usury claim. Republic acknowledges the general rule that waiver and estoppel are not defenses to a usury cause of action. It proposes, however, that this court endorse an exception to the general rule when the usury victim is an attorney. No Texas cases are cited for this proposition and we decline to adopt it. It is clear that even where a person knowingly pays usurious interest, Texas courts allow the victim to recover the statutory penalty. *Western Guaranty Loan Co. v. Dean, supra* at 863. Moreover, Republic argues that its loan officer, Dean, relied upon Shook's legal knowledge and that since he did not inform

Dean that the J.L.S., Inc. loan contravened Texas usury laws, he may not claim a usury violation. This argument is without merit. A lender has a duty not to charge an unlawful rate of interest and may not impose a fiduciary relationship upon its borrowers to inform it of potential usury violations. *See Pinedo v. Halper*, 18 S.W.2d 253, 255 (Tex. Civ.App.—El Paso 1929, writ dism'd).

■ Republic's seventh crosspoint is that the trial court erred in allowing Shook to contradict orally a document which he had previously offered into evidence. This crosspoint has no merit.

Plaintiff's Exhibit Eleven, a memorandum authored by Dean, contained a statement that Shook had suggested the transfer of his personal debt to a corporation. At trial Shook testified, over objection, that Dean had suggested the use of J.L.S., Inc. Republic asserts that the admission of this testimony is error. We disagree.

In *Gevinson v. Manhattan Construction Co. of Okla.*, 449 S.W.2d 458, 466 (Tex.1969), the Texas Supreme Court stated:

> It has been said that one who introduces a document vouches for its accuracy and will not be allowed to impeach or contradict its recitals.... In analogy to the rule that a party may prove the truth of particular facts in direct contradiction of the testimony of his witnesses, *he may also disprove factual recitals in a document introduced by him.* (Emphasis added.)

*See also, Hackney v. Johnson*, 601 S.W.2d 523, 526 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.). We overrule Republic's seventh crosspoint.

■ Republic's eighth crosspoint is that any cause of action for usury which appellant may have had did not survive his death. This contention is likewise without merit.

Shook perfected his appeal to this court on May 15, 1980. Shook was deceased on August 9, 1981. In our opinion, Rule 369a of the Texas Rules of Civil Procedure controls. It provides, in pertinent part:

> If any party to the record in a cause dies after rendition of judgment in the trial court, and before such cause has finally been disposed of on appeal, such cause shall not abate by such death, but the appeal may be perfected and the Court of Civil Appeals or the Supreme Court, if it has granted or thereafter grants a writ therein, shall proceed to adjudicate such cause and render judgment therein as if all the parties thereto were living, and such judgment shall have the same force and effect as if rendered in the lifetime of all the parties thereto.

Republic cites *Childs v. Taylor Cotton Oil Co.*, 612 S.W.2d 245 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.) and *Wright v. E-Z Finance Co.*, 267 S.W.2d 602 (Tex.Civ.App. —Dallas 1954, writ ref'd n.r.e.) to support its contention that Shook's usury cause of action did not survive his death. These cases are easily distinguished. They involved post death assertions of usurious interest by the decedent's estate. We are presented, however, with a pre-death assertion of usurious interest by an individual who died pending disposition of his case on appeal. Accordingly, Republic's eighth crosspoint is overruled.

The portion of the judgment of the trial court disallowing Shook's recovery of an offset of usurious interest is reversed and rendered. We have studied the exhibits detailing the prime rates of interest charged by Republic and the discount rate on ninety-day commercial paper at the Dallas Federal Reserve Bank. During the time pertinent to this case the interest rate Republic could lawfully charge Shook varied due to fluctuations in the prime and discount rates. It appears that Shook paid $25,086.47 of usurious interest on the J.L.S., Inc. loan. His recovery is twice that amount, or $50,172.94. It additionally appears that the third note sued upon by Republic, representing $74,985.38 of accrued interest on the J.L.S., Inc. loan, contains $46,560.53 of usurious interest. Shook is allowed an offset against the note in this amount.

The portion of the trial court's judgment in awarding $29,779.51 as attorney's fees is reversed and remanded to the trial court for the purpose of determining an amount which would constitute reasonable attorney's fees in light of the factors enumerated herein.

The judgment is otherwise affirmed.

Affirmed in part; reversed and rendered in part; reversed and remanded in part.

## ON MOTION FOR REHEARING

Appellee's motion for rehearing argues that our decision will cause havoc among commercial lenders in Texas because they cannot be assured that an individually guaranteed corporate loan within corporate interest rate limits will not be attacked by its guarantor for usurious interest.

 Article 1302–2.09, which denies the claim or defense of usury to a corporate guarantor, clearly applies to individually guaranteed corporate loans in most instances. Texas case law, however, mandates that a transaction's substance determines whether it is usurious. Texas also condemns disguised usurious transactions. *Commercial Securities Co. v. Rea,* 130 Tex. 11, 105 S.W.2d 872, 875 (1937); *Western Guaranty Loan Co. v. Dean,* 309 S.W.2d 857, 863 (Tex.Civ.App.—Dallas 1957, writ ref'd n.r.e.). These authorities lead us to conclude that using a corporation to exact the higher corporate interest rate is impermissible where no corporate business purpose is present for the loan. *See generally* T. Perick, J. Fields and S. Hunt, *A Topic of Interest: An Analysis of the Status of the Usury Law in Texas,* 19 S.Tex.L.J. 525, 533 (1978) and Comment, *Using a "Dummy" Corporate Borrower Creates Usury and Tax Difficulties,* 28 S.W.L.J. 437, 443 (1974). The record here shows no corporate business purpose for the loan to J.L.S., Inc. and that it was in substance a loan to Shook. We believe, therefore, Shook is entitled to a judgment against Republic for usury. Appellee's motion for rehearing is overruled.

 Appellant has moved for rehearing in part requesting that we order forfeiture of the interest accrued on the notes since November 6, 1978, the date of the last renewal note. It appears that all interest accrued after that date was calculated at higher than allowable rates of interest. Therefore, it must be forfeited. Republic is entitled to recover $155,434.69, which represents the principal on all three notes reduced by Shook's recovery for usurious interest paid and offset of usurious interest contained in the notes but not paid. Appellant's motion for rehearing in part is granted and our judgment is so modified.